836 A.2d 110

**PENNSYLVANIA STATE POLICE, Appellant,**

v.

**John PAULSHOCK, Appellee.**

**Pennsylvania State Police, Appellant,**

v.

**Rodney Reed, Appellee.**

Supreme Court of Pennsylvania.

Argued May 13, 2003.

Decided Nov. 20, 2003.

Barbara L. Christie, Joanna Reynolds, for Pennsylvania State Police.

Jarrod Joseph Tranguch, George R. Hludzik, for John Paulshock.

Jarad Wade Handelman, for Rodney Reed.

Before CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN, LAMB, JJ.

## OPINION

Justice LAMB.

We granted discretionary review of the Commonwealth Court's disposition of consolidated petitions for review that were filed by the Pennsylvania State Police (State Police) from decisions rendered by the Office of Attorney General (OAG), holding that orders of the respective courts of common pleas had relieved Appellees, John Paulshock (Paulshock) and Rodney Reed (Reed), of disability from purchasing, owning or using firearms. The disability arose from operation of the Uniform Firearms Act (Uniform Act), 18 Pa.C.S. § 6101 *et seq.*, specifically 18 Pa.C.S. § 6105.[1] Disability also arose pursuant to the Federal Gun Control Act of 1968 (Federal Act), 18 U.S.C. § 921 *et seq.*, specifically 18 U.S.C. § 922. The underlying issue in this appeal is whether the order in each of the two consolidated cases was sufficient to relieve firearm disability under the Federal Act. For the reasons set forth below, we find that such orders could not relieve the federal firearms disability, and therefore, we reverse the order of the Commonwealth Court.

A person who is firearm disabled as a result of a prior conviction in accordance with 18 Pa.C.S. § 6105(a)[2] was able

1. Unless otherwise noted, all references to 18 Pa.C.S. § 6101 *et seq.* refer to the Uniform Act that was in effect as of 1997, Act of June 13, 1995, No.17, as that is the version of the Act relied on and applicable to the underlying adjudications. *See Pennsylvania State Police v. Paulshock,* 789 A.2d 309, 310 (Pa.Cmwlth.2001).

2. The relevant sections of the Uniform Act that were in effect as of 1997, and relied upon by the Commonwealth Court read as follows:

   § 6105. Persons not to possess, use, manufacture, control, sell or transfer firearms

   (a) Offense defined.—(1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

   . . .

   (d) Exemption.—A person who has been convicted of a crime specified in subsection (a) or (b) or a person whose conduct meets the criteria in subsection (c)(1), (2), (5) or (7) may make application to

to seek relief from a firearm disability pursuant to Section 6105(d) by applying for such relief in the common pleas court of the county of the applicant's principal residence. In the first of the two consolidated cases, Paulshock, in 1997, filed a petition with the Luzerne County Court of Common Pleas pursuant to 18 Pa.C.S. § 6105(a). Paulshock had a 1960 conviction for burglary, arson, larceny, and malicious mischief for which he served three years in prison. Paulshock voluntarily limited his request to long guns for sport and recreation. The District Attorney of Luzerne County did not object to Paulshock's petition. Following a hearing, the common pleas court granted Paulshock's petition, stating in its order:

> Petitioner shall be entitled to purchase, possess, and use long guns or rifles for sporting, hunting and recreational purposes, and which were designed and manufactured for the purposes of sporting events, hunting and recreational purposes only, and when called upon to provide proof of relief of disability to possess said long gun, Petitioner may present this order as proof that disability has been waived and/or relieved.[3]

the court of common pleas of the county where the principal residence of the applicant is situated for relief from the disability imposed by this section upon the possession, transfer or control of a firearm.
18 Pa.C.S. § 6105.

3. On March 7, 2001, after briefs were filed with the Commonwealth Court, but prior to oral argument, Paulshock sought and obtained the following revised order from the Luzerne County Court of Common Pleas:

Petitioner shall be allowed to purchase, possess and use handguns, in addition to long guns, for sporting, hunting, recreation and any other lawful purposes. Petitioner's rights with respect to the ownership, purchase and possession of firearms are fully restored and the Petitioner may present this Order as proof that any disability in that respect has been relieved.
It is further ordered and decreed that *all* of Petitioner's civil rights are fully restored, including, but not limited to, the right to vote and the right to serve on a jury. Petitioner may also present this Order as proof that any and all disabilities with respect to his civil rights have been fully relieved and that his civil rights have been fully restored. *Application of Paulshock*, (Luzerne County No. 2691 of 1997, filed March 10, 2001) (emphasis in original).

*Pennsylvania State Police v. Paulshock,* 789 A.2d 309, 313 (Pa.Cmwlth.2001) (*citing* Application of Paulshock, Docket No. 2691, Trial Ct. Order August 19, 1997)(footnote added).

The Commonwealth Court summarized the events that ultimately led to the Paulshock lawsuit:

> On August 21, 1999, Paulshock attempted to purchase a long gun for hunting but was prevented from doing so. Following a records check, the [State Police] determined that, regardless of the order relieving Pennsylvania firearms disability under the Uniform Act, Paulshock's 1960 conviction for crimes punishable by more than two years' imprisonment disabled him from completing the purchase under Section 922(g) of the Federal Act. Paulshock challenged the purchase denial, and, after the [State Police] confirmed its decision, Paulshock appealed to the [Office of Attorney General].[4]

789 A.2d at 314 (Amended Order). Paulshock then sought to have the appeal of the State Police dismissed as moot, believing that the Amended Order rectified any insufficiencies that the State Police had raised on appeal. The Commonwealth Court refused to dismiss the appeal. Rather than challenge the propriety of the Amended Order, the State Police asked the Commonwealth Court to address the original Paulshock order and the Amended Order. The Commonwealth Court did so, and rejected the State Police's arguments with respect to both orders in its determination of the merits of the appeal.

4. Both Paulshock and Reed argue that the State Police do not have standing. However, the State Police never challenged the common pleas court decisions, it simply refused to remove the firearms disability under the federal act. Reed and Paulshock then brought a challenge with the OAG, naming the State Police as a respondent, claiming that the State Police were refusing to comply with the common pleas court orders of expungement and/or relief from firearms disability. *See* R.R.46a, 359a (Attorney General's hearing notice letters to Appellees acknowledging State Police as respondent). Moreover, the State Police are, based on Pennsylvania law, required to honor and enforce a federal firearms disability:

> (b) Duty of Pennsylvania State Police.—
> (1) Upon receipt of a request for a criminal history, juvenile delinquency history and mental health record check of the potential purchaser or transferee, the Pennsylvania State Police shall immediately during the licensee's call or by return call forthwith:
> (i) review the Pennsylvania State Police criminal history and fingerprint records to determine if the potential purchaser or transferee is

*Pennsylvania State Police v. Paulshock,* 789 A.2d at 313(footnote added).

The setting of Reed's case was summarized by the Commonwealth Court as follows:

Rodney Reed's firearms disability under Section 6105 of the Uniform Act and under Section 922 of the Federal Act occurred as a result of his conviction in 1966 for malicious mischief and unlawfully carrying a firearm. He served six weeks on sentences of three to twenty-four months. In 1996, when Reed sought to acquire a handgun from a friend, the local sheriff told him that his 1966 conviction disqualified him from gun ownership. In May of 1997, Reed petitioned common pleas pursuant to Section 6105(d) of the Uniform Act for relief from firearms disability. No objection to the petition having been entered by the Dauphin County District Attorney, common pleas granted Reed's request in an order stating, in pertinent part, as follows:

[I]t is hereby Ordered that Defendant's Petition for Relief From Firearms Disability is GRANTED pursuant to 18 Pa.C.S. 6105(d). Petitioner RODNEY E. REED is therefore permitted to seek application for reinstatement of his firearm privileges, as his prior criminal history is hereby expunged for that purpose.

*Commonwealth v. Reed,* (Dauphin County Nos. 190–3S–66 and 192–3S–66, dated August 29, 1997).

After receiving common pleas' order, Reed applied to the local sheriff for a concealed weapon permit. The weapon's permit was initially denied but later granted after Reed supplied a copy of common pleas' order to the sheriff. Thereafter, Reed purchased two handguns. However, in December of 1998, when Reed attempted a subsequent purchase from a friend, the local gun dealer refused to

prohibited from receipt or possession of a firearm under Federal or State law;

18 Pa.C.S. § 6111.1. Appellees' argument that the State Police lack standing in this matter is meritless. *See generally In re T.J.,* 559 Pa. 118, 739 A.2d 478, 482 (1999)("when the legislature statutorily invests an agency with certain functions, duties and responsibilities, the agency has a legislatively conferred interest in such matters").

complete the paperwork for the transfer of ownership. Based on a records check pursuant to Section 6111.1(b) of the Uniform Act, [the State Police] reported that Reed was disqualified from possessing a firearm by Section 922(g) of the Federal Act, due to his 1966 conviction for unlawfully carrying a firearm, a crime punishable by more than two years imprisonment. Reed challenged the purchase denial and [the State Police] confirmed its decision. Thereafter, Reed appealed to the Office of Attorney General (OAG), which assigned an administrative law judge (ALJ) for a hearing.

789 A.2d at 310–12 (footnotes omitted) (alteration in original).

In Paulshock's challenge, the ALJ, who was appointed by OAG, found that the order of the Luzerne County Court of Common Pleas that exempted Paulshock from firearms disability in Pennsylvania constituted an amendment of his criminal history record that also relieved his firearm disability under the Federal Act. With respect to Reed's challenge, the ALJ determined that the order of the Dauphin County Court of Common Pleas fully removed his firearms disability, but refused to order the State Police to enforce the complete expungement of Reed's criminal record pursuant to Section 9122 of the Criminal History Records Information Act, 18 Pa.C.S. § 9122. The State Police appealed the ALJ orders, arguing that both of the underlying orders entered by the respective common pleas courts were insufficient to relieve Reed and Paulshock's firearm disabilities under the Federal Act. After oral argument on the consolidated cases was presented to the Commonwealth Court *en banc*, the Commonwealth Court affirmed.

In its appeal of the Commonwealth Court's holding relating to Reed, the State Police present the following issue: Did the Commonwealth Court err as a matter of law when it held that a person who was convicted of a federal firearm disabling offense and applied for relief of Pennsylvania firearms disability, pursuant to 18 Pa.C.S. § 6105, could have his criminal record expunged, thereby relieving him of any federal firearms disability? The Commonwealth Court found that:

Section 922(g) of the Federal Act prohibits any person convicted in any court of a crime punishable for a term exceeding one year from possessing a firearm. However, Section 921 of the Federal Act defines a disqualifying conviction in a manner that excludes from federal disqualification persons whose convictions have been expunged and who have received post-conviction restoration of civil rights. It provides:

> Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20). In the simpler of these cases, Reed obtained an order expunging his prior criminal history. Therefore, under the plain terms of Section 921(a)(20), his 1966 guilty plea "shall not be considered a conviction."
789 A.2d at 313.

The State Police concede that if Reed had obtained a full expungement pursuant to 18 Pa.C.S. § 9122, which deals specifically with the expungement of criminal history record information, the expungement would have been effective as to the Federal Act firearms disability. *See* Appellant's Brief at 29. However, the State Police argue that Reed had obtained an order of expungement in the context of a proceeding under Section 6105, rather than under 18 Pa.C.S. § 9122, and that the common pleas court's order only effectuated an expungement of his prior criminal history for purposes of Section 6105. *See* Dauphin County Order dated August 29, 1997, *supra* at 4–5. We agree. The plain language of Section 6105(d) stated: A person who has been convicted of a crime specified in subsection (a) or (b) or ... may make application to the court of common pleas of the county where the principal residence of the applicant is situated *for relief from the disability imposed by this section upon the possession, transfer or control of a firearm.* 18 Pa.C.S. § 6105(d) (emphasis added).

Therefore, the only relief that can be given pursuant to a petition filed under Section 6105(d) is from the firearm disability that is imposed pursuant to Section 6105(a). Appellees argues that the plain language of 18 Pa.C.S. 6105(d)(3) suggests that relief from state disability imposed under Section 6105(a) means relief is also granted for purposes of the federal disability. We disagree. 18 Pa.C.S. 6105(d)(3) stated:

> (d) Exemption.—A person who has been convicted of a crime specified in subsection (a) or (b) or a person whose conduct meets the criteria in subsection (c)(1), (2), (5) or (7) may make application to the court of common pleas of the county where the principal residence of the applicant is situated for relief from the disability imposed by this section upon the possession, transfer or control of a firearm. The court shall grant such relief if it determines that any of the following apply:
>
> . . .
>
> (3) Each of the following conditions is met:
>
> (i) The Secretary of the Treasury of the United States has relieved the applicant of an applicable disability imposed by Federal law upon the possession, ownership or control of a firearm as a result of the applicant's prior conviction, except that the court may waive this condition if the court determines that the Congress of the United States has not appropriated sufficient funds to enable the Secretary of the Treasury to grant relief to applicants eligible for the relief.
>
> (ii) A period of ten years, not including any time spent in incarceration, has elapsed since the most recent conviction of the applicant of a crime enumerated in subsection (b) or a felony violation of The Controlled Substance, Drug, Device and Cosmetic Act.

18 Pa.C.S. § 6105(d). Paulshock relies principally on Section 6105(d)(3)(i), explaining that in his case, the common pleas courts determined that the Secretary of the Treasury had not relieved the federal firearms disability because Congress had not appropriated funds to enable the Secretary of the Treasury to grant such relief, and that therefore, the federal

firearms disability is waived. Paulshock's conclusion, and any agreement therewith on the part of the Commonwealth Court, is a misapplication of the plain language of the statute, and as such, is reversible error. Section 6105(d)(3)(1) merely allowed the common pleas courts to disregard, for purposes of granting relief from the state firearms disability, that the federal disability had not been relieved where it found that such was a result of the lack of federal funds available to adjudicate challenges to a federal disability. Section 6105(d)(3)(i) did not grant the common pleas court the power to relieve a federal firearms disability. Therefore, we find that the only relief that could be granted pursuant to Section 6105(d) is from the state firearms disability imposed under Section 6105(a), and that a common pleas court order could not effectuate removal of a firearms disability imposed pursuant to the Federal Act.

Appellees argue that this renders Section 6105(d) meaningless because relief from the firearms disability is useless where the federal firearms disability still exists. We disagree. Now that the state firearms disability has been relieved, Appellees are one step closer to having a full, state and federal, removal of firearms disability.

Furthermore, a criminal conviction on a criminal history record may only be expunged for purposes of 18 Pa.C.S. § 9122 where "(1) An individual who is the subject of the information reaches 70 years of age and has been free of arrest or prosecution for ten years following final release from confinement or supervision; or (2) An individual who is the subject of the information has been dead for three years." 18 Pa.C.S. § 9122. *See also Commonwealth v. Wolfe,* 749 A.2d 507, 508 (Pa.Super.2000). Therefore, the orders of the common pleas courts entered in response to Appellees' petitions for relief from the firearms disability, relieved the firearms disability in accordance with Section 6105(d)(3)(i), and did not result in the total expungement of Appellees' criminal history record information. Any finding to the contrary would require a finding that Section 6105(d) not only allows for relief from a state firearms disability, but that it also provides for expungement of a criminal history record information, which is

unquestionably governed by 18 Pa.C.S. § 9122, and such expungement can only be achieved pursuant to that section.

In its appeal of the Commonwealth Court's holding relating to Paulshock, the State Police also present the question: Did the Commonwealth Court err as a matter of law when it held that a common pleas court had the authority, pursuant to 18 Pa.C.S. § 6105(d), to fully restore a person's civil rights, so as to relieve the subject of a federal firearms disability? *See* Appellant's Brief at 13. Because we find, as explained *supra*, that a common pleas court could not remove a federal firearms disability in a proceeding filed pursuant to 18 Pa.C.S. 6105, we need not reach the latter issue.

The order of the Commonwealth Court is reversed. Appellees Reed and Paulshock remain firearm disabled under the Federal Act.

Justice SAYLOR files a concurring opinion.

Justice NEWMAN files a concurring and dissenting opinion.

Justice SAYLOR, Concurring.

While I join the majority opinion, I do not view Appellees as being any closer to a restoration of their firearms rights. Rather, as the federal statutory procedure for removing the firearms disability imposed by federal law, 18 U.S.C. § 925(c), is unavailable due to a lack of funding, *see United States v. Bean*, 537 U.S. 71, 74, 75 n. 3, 123 S.Ct. 584, 586, 587 n. 3, 154 L.Ed.2d 483 (2002) (citing Government Appropriations Acts from 1993 through 2002), as no statutory procedure exists in Pennsylvania for restoring civil rights, *see Beecham v. United States*, 511 U.S. 368, 373, 114 S.Ct. 1669, 1672, 128 L.Ed.2d 383 (1994), and as Appellees do not meet the limited criteria for obtaining an expungement of their criminal records under Section 9122(b) of the Crimes Code, 18 Pa.C.S. § 9122(b), their only recourse is through gubernatorial pardon upon recommendation of the Board of Pardons. *See* PA. CONST. art. IV, § 9.[1] I recognize that the federal government has an

1. The provision permitting restoration of firearms rights in Section 6105.1, 18 Pa.C.S. § 6105.1, does not apply in the present context, as it

overarching interest in this area. *See Caron v. United States,* 524 U.S. 308, 316, 118 S.Ct. 2007, 2012, 141 L.Ed.2d 303 (1998) (explaining that, "[a]s to the possession of weapons, ... the Federal Government has an interest in a single, national, protective policy, broader than that required by state law"). However, in light of the absence of a viable federal procedure for removing a firearms disability, where such disqualification results from a state conviction, consideration by the General Assembly of a more flexible statutory procedure for addressing the circumstances presented by Appellees would seem to be in order.

Justice NEWMAN, Concurring and Dissenting.

I concur in the result reached by the Majority, but must respectfully dissent from the failure of the majority to address whether the restoration of the civil rights of Paulshock by the Court of Common Pleas satisfied the exception to the federal firearm disability statute.

Federal law prohibits firearm possession following any state or federal felony conviction, even if the sentence was suspended. 18 U.S.C. § 922(g)(1) (providing that it is unlawful for any person "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year ... to possess ... any firearm or ammunition."). However, the federal statutes contain an explicit statutory exception that provides that the federal criminal offense of firearms possession is inapplicable to persons who have had their civil rights restored on the predicate state felony conviction. 18 U.S.C. § 921(a)(20). That statute specifically states:

(20) The term "crime punishable by imprisonment for a term exceeding one year" *does not include—*

(A) any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or

is limited to convictions under earlier versions of the Vehicle Code or the 1939 Penal Code that would not be currently graded as a crime punishable by more than two years imprisonment or that no longer constitute violations of the law. *See* 18 Pa.C.S. § 6105.1(a), (c).

other similar offenses relating to the regulation of business practices, or

(B) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less.

What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. *Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter,* unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20) (emphasis added). State, not federal, law determines whether an individual has had his or her civil rights restored for a state conviction. *United States v. Cassidy*, 899 F.2d 543 (6th Cir.1990).

The issue to be addressed in this matter is whether the Orders filed by the appropriate Courts of Common Pleas [1] are sufficient to relieve all firearms disability imposed on Rodney Reed (Reed) and John Paulshock (Paulshock). Essentially, I agree with the disposition of the matter of Reed.

Federal law requires an expungement, a pardon, or the restoration of civil rights as a prerequisite for relief from a violation of the federal statutory ban on possession of firearms by a convicted felon. As used in criminal law, "expungement" means the "eradication of a record of conviction or adjudication upon the fulfillment of prescribed conditions.... It is not simply the lifting of disabilities attendant upon conviction and

---

1. Section 6105 of the Uniform Firearms Act, 18 Pa.C.S. § 6105, states that "[a] person ... whose conduct meets the criteria in subsection (c)(1), (2), (56) or (7) may make application to the court of common pleas of the county where the principal residence of the applicant is situated for relief from the disability imposed by this section upon the possession, transfer or control of a firearm." Thus, Reed was required to apply to the Dauphin County Court of Common Pleas and Paulshock had to apply to the Luzerne County Court of Common Pleas for relief from State statutory firearms disability.

a restoration of civil rights.... It is rather a definition of status, a process of erasing the legal event of conviction or adjudication and thereby restoring to the regenerative offender his *status quo* ante." Grough, *Expungement of Adjudication Records* 1966 Wash. U.L.Q. 147, 149. Federal case law further supports this. *See Caron v. United States*, 524 U.S. 308, 118 S.Ct. 2007, 141 L.Ed.2d 303 (1998) (stating that, although Massachusetts state law allows a convicted felon to have rifles after relief from firearm disabilities, Massachusetts does not permit petitioner to have handguns and, therefore, there has been no relief from federal firearms disabilities). In the matter of Reed, there is no expungement, pardon, or restoration of civil rights, only state relief from firearms disability pursuant to 18 Pa.C.S. § 61-5(d).

To obtain expungement of one's criminal history, an individual must seek expungement pursuant to 18 Pa.C.S. § 9122, which is available when the individual: (1) "who is the subject of the information reaches 70 years of age and has been free of arrest or prosecution for ten years following final release from confinement or supervision;" or (2) "who is the subject of the information has been dead for three years." Reed did not attain full expungement, as indicated by the Majority and, while Reed would not violate *state* law if he were to secure a firearm, he would still violate *federal* law.[2] Because the State Police has the job of administering both federal and state firearms law in this Commonwealth, I believe that the Majority is correct that the State Police properly denied Reed's application to purchase a firearm and the Commonwealth Court erred in determining that Reed's federal firearms disability had been relieved. See 18 Pa.C.S. § 6111.1(b)(1)(i) (stating that it is the duty of the State Police to review the "criminal history and fingerprint records to determine if the potential purchaser ... is prohibited from receipt or possession of a firearm under Federal or State law).

**2.** If there is no procedure for restoration of civil rights contained in state statutory law, then an individual violates federal law by possessing a firearm, even if that individual has had his or her firearm disability removed pursuant to state law. *Beecham v. United States*, 511 U.S. 368, 373, 114 S.Ct. 1669, 128 L.Ed.2d 383 (1994).

The issue as to whether Paulshock achieved relief from firearms disability is more complex. Paulshock, who did not challenge the accuracy of his criminal history, relied upon the Common Pleas Court Order that relieved him of the firearms disability imposed by the Uniform Firearms Act on his right to purchase a firearm in the Commonwealth. Like Reed, Paulshock was relieved of his state firearm disability pursuant to Section 6105(d), but not his federal firearm disability. Thus, I would find the Commonwealth Court erred in determining that Paulshock's federal firearm disability had been relieved.

This does not end the matter, for Paulshock returned to the Court of Common Pleas and secured an Order that stated that his civil rights were fully restored and that all firearms disability was relieved. The State Police challenges this Order because it believes that the courts of common pleas do not have the authority to restore civil rights. It is at this point that I diverge from the Opinion of the Majority. The Majority addressed only one challenge mounted by the State Police on this matter. It believes that the courts of common pleas are without authority to remove a federal firearms disability and concludes that this ends the matter. I must respectfully disagree.

As I have previously noted, the federal statute contains an explicit statutory exception providing that the federal criminal offense of firearms possession is inapplicable to persons who have had their civil rights restored on the predicate state felony conviction. 18 U.S.C. § 921(a)(20). Thus, if Paulshock succeeded in obtaining the restoration of his civil rights via an Order of the Court of Common Pleas, Section 922(g)(1) does not apply and Paulshock would not violate federal law by owning or possessing a firearm.

Federal court decisions have concluded that, for federal law to recognize state restoration of rights, the state restoration must include: (1) the right to vote; (2) the right to seek and hold public office; and (3) the right to serve on a jury. *See, e.g., Hampton v. United States,* 191 F.3d 695 (6th Cir.1999). If the state restoration of rights includes the three aforemen-

tioned rights, federal law contains an additional clause that looks to state law to determine whether the state imposes any further restriction on the right of the convicted felon to possess a weapon.[3] If state law provides some added restriction, this federal clause is triggered to make the possession of firearms unlawful pursuant to federal law, notwithstanding the restoration of civil rights by the state.

In the instant matter, Paulshock returned to the Court of Common Pleas and secured an Order that stated that his civil rights were fully restored and that all firearms disability was relieved. The State Police challenges this Order because it believes that the courts of common pleas do not have the authority to restore civil rights. Again, I believe that, if the courts of common pleas have the authority to restore civil rights, then there is no federal firearms disability to be relieved and Paulshock is entitled to purchase firearms. The civil rights at issue, then, are the right to vote, the right to seek and hold public office, and the right to sit on a jury.

The right to vote in Pennsylvania is automatically restored upon completion of the term of imprisonment. *See Mixon v. Commonwealth*, 759 A.2d 442 (Pa.Cmwlth.2000), *aff'd per curiam*, 566 Pa. 616, 783 A.2d 763 (2001). The disqualifying factor for elector status in Pennsylvania is, *inter alia*, confinement in a penal institution and that disqualifying factor is removed upon release. *See* 25 P.S. § 2602(w); 25 P.S. § 3146.1. Therefore, Paulshock's right to vote was restored upon his release from confinement and no order of a court of common pleas is required to effectuate the restoration of the right to vote.

Regarding the right of Paulshock to seek and hold public office and his right to serve on a jury, those rights have not been restored. Article II, Section 7 of the Pennsylvania

3. Some states, such as North Carolina, prohibit the subsequent possession of a handgun upon expungement or restoration of civil rights, but would allow an individual to possess a rifle or shotgun. Thus, in North Carolina, an individual could be convicted pursuant to federal law for possession of a rifle or shotgun even though it would be lawful under North Carolina law. *See, e.g., Caron v. United States*, 524 U.S. 308, 118 S.Ct. 2007, 141 L.Ed.2d 303 (1998).

Constitution provides: "No person hereafter convicted of embezzlement of public moneys, bribery, perjury or other infamous crime, shall be eligible to the General Assembly, or capable of holding any office of trust or profit in this Commonwealth." This Court has held that the term "infamous crimes" includes felonies, and Paulshock was convicted of one or more felonies. *Commonwealth ex rel Baldwin v. Richard,* 561 Pa. 489, 751 A.2d 647 (2000). In *Baldwin,* this Court determined that the courts of common pleas were without authority to permit a plea bargain that would subvert the Pennsylvania Constitution by permitting a convicted felon to continue in public office. Further, 42 Pa.C.S. § 4502 prohibits persons convicted of crimes punishable for more than one year from sitting on a jury. No statutory relief from this abrogation of a civil right has been provided by the General Assembly. Accordingly, I must conclude that the courts of common pleas do not have the authority to restore the civil rights of a convicted felon.[4]

Thus, with regard to Paulshock, his civil rights have not been restored and he is ineligible, pursuant to federal law, to purchase firearms of any type. Without a restoration of civil rights, there is no official judgment evidencing the state's renewed trust in the individual to justify putting firearms back into the hands of those who have been convicted of a felony. Hence, while I agree that the Order of the Commonwealth Court should be reversed, I must also conclude that the civil rights of Paulshock have not been restored by Common Pleas, which is without authority to restore the right to hold public office and the right to sit on a jury.

---

4. I note that, in December of 2002, the General Assembly enacted a provision of the Uniform Firearms Act permitting complete restoration of civil rights. 18 Pa.C.S. § 6105.1 (effective December 9, 2002). This provision, if unassailable, was enacted too late to be addressed or applied to the present matter.