# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David A. Titus,                          :
                                         :
                    Petitioner           :
                                         :
          v.                             :    No. 1841 C.D. 2014
                                         :
Pennsylvania State Police,               :    Argued: June 15, 2015
                                         :
                    Respondent           :


BEFORE:    HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**                    **FILED:  August 5, 2015**


David A. Titus (Petitioner) petitions for review of the Order of an Administrative Law Judge (ALJ) of the Office of the Attorney General that denied Petitioner's appeal from the decision by the Pennsylvania State Police (PSP) rejecting Petitioner's application to purchase a gun (Application).  The PSP denied Petitioner's Application pursuant to the Federal Gun Control Act[1] (Federal Gun Act) and the Pennsylvania Uniform Firearms Act of 1995[2] (Uniform Firearms Act) based on Petitioner's guilty plea to resisting arrest in Maryland in 1979, which

---

[1] 18 U.S.C. §§ 921-931.

[2] 18 Pa. C.S. §§ 6101-6127.

was, at that time, an "uncharacterized misdemeanor" that carried no maximum sentence. The PSP concluded that Petitioner's conviction precluded him from obtaining a gun because, under the Federal Gun Act, anyone who has been convicted of a misdemeanor punishable by imprisonment of more than two years is denied the right to possess a firearm. On appeal, Petitioner asserts that he is no longer ineligible from purchasing a gun under the Federal Gun Act because his gun rights in Maryland were fully restored pursuant to the current Maryland Public Safety Law (Maryland Gun Law) and, therefore, the PSP erred in rejecting his Application. For the following reasons, we vacate and remand for further proceedings.

## I.    Background

On October 15, 1979, Petitioner pled guilty in Maryland to resisting arrest, an uncharacterized Common Law misdemeanor at the time, and was sentenced to: a sixty-day suspended jail sentence; one year of probation; and a $500 fine. (Maryland Court Record, R.R. at 14a.) Maryland has since codified the crime of resisting arrest and it now carries a maximum prison sentence of three years. Section 9-408 of Maryland Crimes Code, Md. Code Ann., Crim. Law § 9-408.

In 2013, Petitioner attempted to purchase a firearm in Pennsylvania. Petitioner's background check, through the Pennsylvania Instant Check System (PICS), revealed the 1979 conviction and he was not approved to purchase a firearm. Petitioner submitted a PICS challenge on May 11, 2013. (PICS Challenge, R.R. at 5a-8a.) In its review, the PSP found there was no maximum sentencing requirement for Common Law misdemeanors in Maryland in 1979, but that a contemporaneous case had noted that a defendant convicted of resisting

2

arrest had received a three year sentence.[3]  Based on this information and Petitioner's conviction, the PSP confirmed the denial of Petitioner's Application on May 29, 2013, and explained to Petitioner that the conviction was prohibiting under Section 922(g) of the Federal Gun Act[4] because the maximum penalty he *could have received* exceeded two years.  (Letter from the PSP to Petitioner (May 29, 2013), R.R. at 30a.)

Petitioner submitted material related to the current Maryland Gun Law to the PSP's PICS Challenge Unit, which he argued no longer prohibits him from purchasing a gun in Maryland.  (Letter from Petitioner to the PSP,[5] R.R. at 32a.) After review, the PSP upheld its decision to deny Petitioner's Application.  (Letter from the PSP to Petitioner (November 29, 2013), R.R. at 36a.)  Petitioner then

---

[3] Downs v. Maryland, 366 A.2d 41, 43 (Md. 1976).  However, this case addressed other aspects of the defendant's sentence, and only mentions his three year sentences for assault and battery and resisting arrest, which was ultimately modified by a sentence review panel to suspended sentences and probation.

[4] 18 U.S.C. § 922(g).  Section 922(g)(1) states: "it shall be unlawful for any person – who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm . . . or receive . . . any firearm which has been shipped or transported in interstate or foreign commerce."  18 U.S.C. § 922(g)(1).  The Federal Gun Act additionally provides, in relevant part, that the term "crime punishable by imprisonment for a term exceeding one year" does not include – . . . (B) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less.  18 U.S.C. § 921(a)(20)(B).

[5] The date of Petitioner's letter is unclear because the date on the letter is "May 12, 2013," but it is written in response to the PSP's May 29, 2013 letter explaining the denial based on Petitioner's Maryland conviction.

3

requested a hearing to challenge the PSP's denial, and the Attorney General assigned an ALJ to conduct the hearing.[6]

The ALJ conducted a hearing on August 28, 2014. The PSP presented the testimony of the supervisor who processed Petitioner's PICS challenge. The Supervisor explained that because Petitioner pled guilty in Maryland for resisting arrest, a Common Law misdemeanor for which there was no maximum penalty under Maryland law at the time, he could have received a sentence exceeding two years, thereby triggering the prohibition under Section 922(g) of the Federal Gun Act. (Hr'g Tr. at 12-13.) Petitioner responded that the current Maryland Gun Law restored his gun rights in Maryland, which also acted to remove the restriction on his Federal gun rights under the Federal Gun Act. (Hr'g Tr. at 19.) Petitioner asserted that he could present additional evidence to demonstrate that he has been a law-abiding citizen since his 1979 conviction, but did not believe additional evidence was necessary to make a decision on his appeal. (Hr'g Tr. at 19.) Rather, the parties appeared to agree that "the penalty at the time of conviction is what controls" in these cases, and Petitioner agreed that, when he pled guilty in 1979, there was no maximum term for his crime. (Hr'g Tr. at 20-22.) After considering the parties' positions, the ALJ denied Petitioner's request for relief. (ALJ Order,

---

[6] This procedure is prescribed by Section 6111.1(e) of the Uniform Firearms Act, which provides in relevant part: "Challenge to records – If the challenge is ruled invalid, the person shall have the right to appeal the decision to the Attorney General within 30 days of the decision. The Attorney General shall conduct a hearing de novo in accordance with the Administrative Agency Law . . . ." 18 Pa. C.S. § 6111.1(e).

C.R. at Appendix I.) Petitioner now petitions this Court for review of the ALJ's Order.[7]

## II. Discussion

### a. Relevant Legal Provisions

Initially, we provide an overview of the separate sources of law involved here: the Uniform Firearms Act; the Federal Gun Act; and Maryland's Common Law, Crimes Code, and Gun Law. As described below, the Federal Gun Act and the individual States' gun laws interact to provide the basis for the Federal disqualification and restoration of gun rights that are at issue here.

When a person applies for a gun license in Pennsylvania, Section 6111.1(b)(1)(i) of the Uniform Firearms Act requires the PSP to "review the [PSP] criminal history and fingerprint records to determine if the potential purchaser or transferee is prohibited from receipt or possession of a firearm under Federal or State law." 18 Pa. C.S. § 6111.1(b)(1)(i). At issue here is whether Petitioner is prohibited under Federal law. Essentially, under Sections 921(a)(20)(B) and 922(g)(1) of the Federal Gun Act, it is "unlawful for any person who has been convicted" of "any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment" of more than two years to own or purchase a firearm. Pennsylvania and Federal courts recognize that the language in Section 922(g)(1) of the Federal Gun Act refers to the maximum allowable sentence for the crime and not merely the sentence the applicant actually received. Ray v. Office of Attorney General, 65 A.3d 473, 475 (Pa. Cmwlth.

[7] "Our review is limited to determining whether necessary findings are supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated." Ray v. Office of Attorney General, 65 A.3d 473, 474 n.5 (Pa. Cmwlth. 2013).

2013); see Schrader v. Holder, 704 F.3d 980, 985 (D.C. Cir. 2013) (noting that "other courts of appeal have uniformly rejected the argument that the actual sentence imposed is controlling for purposes of triggering the federal firearms ban"). Additionally, in making this determination, Pennsylvania courts have "look[ed] to the penalty at the time of conviction without regard to any 'after-the-fact' changes" when considering the application of either State or Federal prohibitions on firearm licenses. Bellum v. Pennsylvania State Police, 762 A.2d 1145, 1149 (Pa. Cmwlth. 2000).

However, the Federal Gun Act also provides that:

What constitutes a conviction of *such a crime* shall be determined in accordance *with the law of the jurisdiction in which the proceedings were held*. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20) (emphasis added). Thus, the Federal Gun Act relies upon "the law of the jurisdiction in which the [criminal] proceedings were held" to define what constitutes a disqualifying "conviction." Id. The Federal Gun Act also indicates that a "conviction" may cease to be a disqualifying conviction if certain events occur, such as pardon, expungement, or the restoration of the petitioner's civil rights, including their full gun rights. Id.

At the time Petitioner was convicted of resisting arrest, Maryland Law provided no maximum punishment for his conviction, and that crime presently

6

bears a maximum punishment of three years in prison.[8]  Md. Code Ann., Crim. Law § 9-408.  Pursuant to the Maryland Gun Law, currently in effect, "a person may not possess a regulated firearm if the person: . . . has been convicted of a violation classified as a common law crime *and received a term of imprisonment of more than [two] years.*"  Md. Code Ann., Pub. Safety § 5-133(b)(2) (emphasis added).  Section 5-118(b)(3)(iii) of the Maryland Gun Law requires that an applicant for a gun license must include a statement that the applicant "has never been convicted of a violation classified as a common law crime *and received a term of imprisonment of more than [two] years*."  Md. Code Ann., Pub. Safety § 5-118(b)(3)(iii) (emphasis added).  Thus, unlike Pennsylvania law, the current Maryland Gun Law focuses on the sentence an applicant *actually receives* rather than what the applicant *could have received* for a Common Law misdemeanor in determining whether an applicant is disqualified.[9]  Also, *unlike* Pennsylvania law, Maryland relies on the penalty imposed "at the time the person convicted seeks to possess a regulated firearm" rather than at the time of the conviction.  Maryland State Police v. McLean, 14 A.3d 658, 664 (Md. Ct. Sp. App. 2011).

---

[8] Notably, resisting arrest in Pennsylvania was, in 1979 and remains today, a misdemeanor of the second degree punishable by no more than two years in prison, Sections 1104 and 5104 of the Crimes Code, 18 Pa. C.S. §§ 1104, 5104.  Therefore, had Petitioner been convicted of this crime in Pennsylvania, it would *not* be a disqualifying offense under the Federal Gun Act.

[9] With other misdemeanors, it appears that the Maryland Gun Law applies the broader, "punishable" standard used by Pennsylvania and the Federal courts.  See Section 5-101(g)(3) of the Maryland Gun Law, Md. Code Ann., Pub. Safety § 5-101(g)(3) (stating that a "'[d]isqualifying crime' means: . . . a violation classified as a misdemeanor in the State that *carries a statutory penalty* of more than [two] years") (emphasis added).

7

It is under this legal framework that we set forth and address the parties' arguments.

### b. *Parties' Arguments*

Petitioner argues that his 1979 conviction of resisting arrest, a Common Law misdemeanor in Maryland for which he received only a suspended sentence, probation, and a fine, no longer constitutes an offense that classifies him as a prohibited person under the Federal Gun Act and, therefore, the PSP erred in denying his Application. Relying on Caron v. United States, 524 U.S. 308, 313 (1998), Petitioner asserts that it is the law of the jurisdiction in which the criminal proceedings were held, here, Maryland, that defines what constitutes a disqualifying conviction and determines when the necessary events occur to prompt the restoration of an individual's Federal gun rights under the Federal Gun Act. Because Maryland has "clarified the effect of its uncharacterized misdemeanor convictions on firearms rights" in the Maryland Gun Law, (Petitioner's Br. at 8), Maryland fully "restored" Petitioner's gun rights because he did not receive a prison sentence of more than two years. In doing so, Maryland also relieved Petitioner's federal disqualification under Caron and the restoration provisions of Section 921(a)(20) of the Federal Gun Act. Petitioner also argues that the PSP erred in denying his Application based on this Court's decision in Pennsylvania State Police v. Grogan, 790 A.2d 1093, 1096 (Pa. Cmwlth. 2002) (holding that a trial court could restore an applicant's gun rights under both the Uniform Firearms Act and the Federal Gun Act by granting an exemption under

Section 6105(d) of the Uniform Firearms Act[10]), rev'd, 843 A.2d 1223 (Pa. 2004). Petitioner also asserted, at oral argument, that the decision of the United States District Court for the Middle District of Pennsylvania in Suarez v. Holder, __ F. Supp. 3d __, No. 1:14-CV-968, 2015 WL 685889 (M.D. Pa. Feb. 18, 2015), provides support for his position.

The PSP responds that Petitioner is prohibited from possessing or purchasing a gun under Sections 921(a)(20)(B) and 922(g)(1) of the Federal Gun Act because his 1979 conviction did not have a maximum sentence;[11] therefore, it was a misdemeanor punishable by more than two years. Although Petitioner is permitted to purchase a gun under the Maryland Gun Law, it is not relevant to this inquiry because he is still prohibited under the Federal Gun Act, which is more restrictive than most State gun laws. Furthermore, Grogan does not support Petitioner's position because it conflicts with our Supreme Court's decision in Pennsylvania State Police v. Paulshock, 836 A.2d 110, 115-16 (Pa. 2003), holding that an exemption granted under Section 6105(d) of the Uniform Firearms Act does not relieve the Federal prohibition to obtain or possess a firearm. Moreover, Petitioner did not present evidence that his 1979 conviction was ever expunged, set-aside, pardoned, or that Section 5-118 of the Maryland Gun Law restored all of

---

[10] 18 Pa. C.S. § 6105(d). Section 6105(d) of the Uniform Firearms Act states that a court of common pleas may, under certain circumstances, provide "relief from the disability *imposed by this section*" upon an individual's gun rights by granting an exemption. Id. (emphasis added).

[11] See McNeal v. State, 28 A.3d 88, 98 (Md. Ct. Spec. App. 2011) (stating that the length of sentence for common law resisting arrest offense was capped at three years following the enactment of the crime of resisting arrest in Section 9-408 of Maryland's Crimes Code, Md. Code Ann., Crim. Law, § 9-408); Downs, 366 A.2d at 43 (indicating that a defendant may have received a three-year sentence after being found guilty of resisting arrest at common law in 1976).

Petitioner's civil rights as required to reinstate   Petitioner's Federal gun rights under Section 921(a)(20) of the Federal Gun Act.

### c. Analysis

PSP is correct that Grogan was reversed by the Supreme Court based on its holding in Paulshock that an exemption granted under Section 6105(d) of the Uniform Firearms Act cannot restore one's Federal gun rights.[12] Grogan, 843 A.2d at 1223 (stating that Grogan was reversed based on Paulshock) (Per Curiam Order).  Suarez involved challenges to the Federal Gun Act disqualification for two reasons:  (1) because the applicant could have been sentenced to less than two years in prison for his conviction of a Maryland misdemeanor that carried a maximum sentence of three years; and (2) as violating the Second Amendment of the United States Constitution when applied to the applicant.  Suarez, __ F. Supp. 3d at __, 2015 WL 685889, at **1, 7.  The United States District Court for the Middle District of Pennsylvania rejected the applicant's first challenge, concluding that the terms "punishable" means the maximum that an individual could receive.  Id. at __, 2015 WL 685889, at *4.  However, the District Court analyzed the applicant's as-applied constitutional challenge and granted the applicant's Motion

---

[12] In Paulshock, this Court held that a trial court's order pursuant to Section 6105(d) of the Uniform Firearms Act relieved the applicant's disability from purchasing, owning, or using firearms under both that law and the Federal Gun Act.  Paulshock, 836 A.2d at 111.  Our Supreme Court reversed, noting that Section 6105(d) referred only to lifting the disability under the Uniform Firearms Act and, therefore, only a "full expungement" of the applicant's conviction pursuant to Section 9122 of the Criminal History Record Information Act, 18 Pa. C.S. § 9122, would relieve the Federal disability.  Id. at 114-15.  The Supreme Court further noted that it was unnecessary to reach the issue of whether a trial court could, per Section 6105(d), "restore a person's civil rights, so as to relieve the subject of a [F]ederal firearms disability" based on its conclusion that a proceeding under that section could not relieve the Federal prohibition.  Id. at 116.

for Summary Judgment, concluding that the applicant fell outside the intended scope of Section 922(g)(1) of the Federal Gun Act because the applicant's conviction did not involve violence and the applicant's "background and circumstances in the years following his conviction establish that he is no more dangerous than a typical law-abiding citizen and poses no continuing threat to society." Suarez, __ F. Supp. 3d at __, 2015 WL 685889, at **9-10.  Petitioner has not raised an as-applied challenge to his Federal prohibition under Section 922(g)(1) of the Federal Gun Act; therefore, we do not apply that analysis.[13]

The question before this Court involves how to interpret and apply the Pennsylvania and Maryland laws as required by the Federal Gun Act.  Applying the Federal Gun Act, it is the law of *Maryland*, as the jurisdiction in which the criminal proceedings against Petitioner were held, that determines "[w]hat constitutes a conviction of *such a crime*."  18 U.S.C. § 921(a)(20) (emphasis added).  The United States Supreme Court has identified this as a "choice-of-law clause" that "defines the rules for determining '[w]hat constitutes a conviction'" that will disqualify an individual from obtaining and possessing a gun.  Beecham v. United States, 511 U.S. 368, 371 (1994) (quoting 18 U.S.C. § 921(a)(20)).

---

[13] We note that the facts in Suarez are similar to the facts in this case because, similar to Suarez, Petitioner here did not serve any time in jail, ultimately only received one year of probation and, although Petitioner did pay his $500 fine, the conviction is decades old and it does not appear that the offense involved the use of force, threat of force, coercion, or threats to public safety.  Suarez, __ F. Supp. 3d at __, 2015 WL 685889, at *13.  However, we do not apply the same analysis here, which was based on United States v. Barton, 633 F.3d (3d Cir. 2011), because Petitioner has not raised an as-applied Second Amendment challenge.

11

Notwithstanding this choice-of-law language in the Federal Gun Act, the PSP relies upon *Pennsylvania* law, including this Court's decision in <u>Bellum</u>, to conclude that, applying Maryland's law at the time of Petitioner's conviction in 1979, Petitioner's Federal gun rights have not been reinstated and, therefore, he is prohibited from obtaining a gun in Pennsylvania under the Uniform Firearms Act. <u>Bellum</u> involved a Pennsylvania criminal statute that imposed a punishment exceeding two years for DUI when the petitioner was convicted, but which was subsequently amended to reduce the punishment to be less than two years. <u>Bellum</u>, 762 A.2d at 1147. Thus, the statutory punishment when the petitioner was convicted was disqualifying under Federal law, but the statutory punishment when the petitioner applied for the firearm was not. <u>Id.</u> at 1147-48. This Court, in an issue of first impression, found an opinion of the United States Court of Appeals for the Tenth Circuit persuasive in determining that "after-the-fact" changes to the statute were not applicable to the disqualification. <u>Id.</u> at 1148 (citing <u>United States v. Place</u>, 561 F.2d 213 (10th Cir. 1977)). However, <u>Bellum</u> only involved Pennsylvania law, while here, pursuant to Section 921(a)(20) of the Federal Gun Act, we are to apply the law of Maryland to determine whether Petitioner is disqualified, *and remains disqualified*, under the Federal Gun Act.[14] Accordingly, we disagree with the PSP to the extent that it asserts that, under Pennsylvania law, we are to look only to the state of Maryland law at the time of Petitioner's 1979

---

[14] In addition, we note that this Court, in <u>Bellum</u>, indicated that applicants are not without recourse because the Secretary of the Treasury, now the United States Attorney General, can relieve firearms disabilities under Section 925(c) of the Federal Gun Act, 18 U.S.C. § 925(c). However, Section 925(c) does not provide any relief in practice because, since 1992, Congress has prohibited the Attorney General from using funds to investigate and provide relief under Section 925(c). <u>Schrader</u>, 704 F.3d at 982-83.

conviction to determine whether Petitioner has a disqualifying conviction under the Federal Gun Act and whether that prohibition has been relieved.

Applying Maryland law to the present matter, we note that it is Maryland's Common Law and Crimes Code, not the Maryland Gun Law, which sets forth the punishment for a conviction. Thus, it is that law that we initially review to determine if a crime is disqualifying under the Federal Gun Act. The punishment associated with the crime of resisting arrest in Maryland at the time of Petitioner's conviction exceeded two years, and that punishment continues to exceed two years as set forth in Section 9-408 of the Maryland Crimes Code. Md. Code Ann., Crim. Law § 9-408. Therefore, under Maryland law, as it existed then and exists now, Petitioner would be disqualified under Section 922(g)(1) of the Federal Gun Act.

Nonetheless, Section 921(a)(20) of the Federal Gun Act includes a provision that, essentially, clears an otherwise disqualifying conviction under certain circumstances. That section provides that "[a]ny conviction which has been expunged, or set aside or *for which a person* has been pardoned or *has had civil rights restored shall not be considered a conviction* for purposes of this chapter" unless the person's firearm rights remain restricted. 18 U.S.C. § 921(a)(20) (emphasis added). In <u>Caron</u>, the United States Supreme Court held that Section 921(a)(20) of the Federal Gun Act "define[s] convictions, pardon, expungements, and restorations of civil rights by reference to *the law of the convicting jurisdiction.*" <u>Caron</u>, 524 U.S. at 313 (emphasis added). The phrase "restoration of civil rights" referred to in Section 921(a)(20) relates to the "[r]estoration of the right to vote, the right to hold office and the right to sit on a jury." <u>Caron</u>, 524 U.S.

13

at 316. The restoration of these rights, along with an individual's full gun rights, may occur on an individualized basis via a pardon or by operation of law through the passage of legislation. Id. Hence, under Caron's interpretation of Section 921(a)(20), if, *under the law of the convicting jurisdiction*, an individual has had the rights to vote, hold office, and sit on a jury restored, along with the restoration of the individual's *full* gun rights,[15] the underlying conviction is no longer disqualifying under the Federal Gun Act. Caron, 524 U.S. at 315-16. Accordingly, if, under the law of Maryland, Petitioner's full gun rights and his rights to vote, hold office, and sit on a jury have been restored, Petitioner's 1979 conviction would no longer be disqualifying under the Federal Gun Act.

Petitioner asserts that the purpose of Section 5-118(b)(3)(iii) of the Maryland Gun Law was to restore any gun ownership rights that were inadvertently affected by Section 921(a)(20)(B) of the Federal Gun Act. Sections 5-118(b)(3)(iii) and 5-133(b)(2) of the Maryland Gun Law limit gun possession for those convicted of a Common Law misdemeanor *only* to those who actually received more than two years in prison. Md. Code Ann., Pub. Safety §§ 5-118(b)(3)(iii), 5-133(b)(2) (emphasis added). In doing so, Maryland has restored the gun rights of those, like Petitioner, who were not sentenced to more than two years in prison for their Common Law misdemeanors. There is no indication in the

---

[15] The United States Supreme Court explained in Caron, however, that the Federal Gun Act was intended to be broader than existing state gun laws, stating that "the Federal Government has an interest in a single, national, protective policy, broader than required by state law." Caron, 524 U.S. at 316. Therefore, the Court held that where a state restores only *limited* gun rights, this *partial* reinstatement does not restore the individual's gun rights under the Federal Gun Act and that person remains prohibited, under Federal law, from possessing *any* firearms, not just those prohibited under state law. Id. at 316-17.

14

Maryland Gun Law that these rights are otherwise restricted or limited; therefore, we conclude that Maryland has restored Petitioner's full gun rights under its laws.[16]

It appears that the PSP would have us disregard these provisions of the Maryland Gun Law on the basis that, because they did not exist in 1979, they are irrelevant to our inquiry. While these provisions may not have been relevant to the initial determination regarding whether the 1979 conviction was disqualifying under Federal law, they are relevant in determining whether that conviction remains disqualifying. The restoration language in Section 921(a)(20) of the Federal Gun Act necessarily recognizes that the circumstances relating to a disqualifying conviction may change after the conviction, whether through a pardon, expungement, or the passage of legislation. The PSP's refusal to consider the provisions as being relevant to these matters because they were not the law at the time of Petitioner's conviction does not give effect to the Federal Gun Act's restoration provisions.

Having concluded that Maryland has restored Petitioner's full gun rights in Maryland, the next question, under Caron, is whether Petitioner's other civil rights also were restored. As noted by the PSP, Petitioner did not present evidence at the hearing to support the conclusion that Maryland has restored his other civil rights.

---

[16] Moreover, there does not appear to be any language in the Maryland Gun Law that specifically limits Sections 5-118 and 5-133 of the Maryland Gun Law only as relieving the disability of Petitioner's gun rights under Maryland law. This is unlike Section 6105(d) of the Uniform Firearms Act, which, as observed by our Supreme Court in Paulshock, specifically limits the expungement to the disability imposed by the Uniform Firearms Act and does not relieve the prohibition under the Federal Gun Law. Paulshock, 863 A.2d at 114-15. Thus, Paulshock does not require a different result.

15

However, after reviewing the transcript, it appears that Petitioner was willing to produce additional evidence at the hearing regarding factors other than his conviction and the restoration of his gun rights under the Maryland Gun Law, but it was believed that such evidence was not relevant to the ALJ's determination. (Hr'g. Tr. at 19.) Pursuant to our review of the relevant State and Federal provisions, and our conclusion that Maryland has restored Petitioner's full gun rights, we hold that such evidence is relevant to determine whether Petitioner's Federal gun rights have been restored so as to lift the prohibition against him under the Uniform Firearms Act. Accordingly, it is necessary to remand this matter to allow Petitioner to present evidence to determine whether Maryland has restored his other civil rights.

For the foregoing reasons, the ALJ's Order is vacated, and this matter is remanded for further proceedings in accordance with this opinion.

**RENÉE COHN JUBELIRER, Judge**

Judge Leadbetter dissents.

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David A. Titus,                               :
                                              :
                    Petitioner                :
                                              :
              v.                              :    No. 1841 C.D. 2014
                                              :
Pennsylvania State Police,                    :
                                              :
                    Respondent                :

## **O R D E R**

   **NOW**,  August 5, 2015,  the Order entered in the above-captioned matter is hereby **VACATED** and this matter is **REMANDED** for further proceedings in accordance with the foregoing opinion.


   Jurisdiction relinquished.


_____
**RENÉE COHN JUBELIRER, Judge**