## CARON v. UNITED STATES

No. 97–6270.   Argued April 21, 1998—Decided June 22, 1998

KENNEDY, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and STEVENS, O'CONNOR, GINSBURG, and BREYER, JJ., joined. THOMAS, J., filed a dissenting opinion, in which SCALIA and SOUTER, JJ., joined, *post*, p. 317.

*Owen S. Walker* argued the cause for petitioner. With him on the briefs was *Bjorn R. Lange.*

*Jonathan E. Nuechterlein* argued the cause for the United States. On the brief were *Solicitor General Waxman, Acting Assistant Attorney General Keeney, Deputy Solicitor General Dreeben, Edward C. DuMont,* and *Nina Goodman.*

JUSTICE KENNEDY delivered the opinion of the Court.

Under federal law, a person convicted of a crime punishable by more than one year in prison may not possess any firearm. 18 U. S. C. § 922(g)(1). If he has three violent felony convictions and violates the statute, he must receive an enhanced sentence. § 924(e). A previous conviction is a predicate for neither the substantive offense nor the sentence enhancement if the offender has had his civil rights restored, "unless such . . . restoration of civil rights expressly provides that the person may not . . . possess . . . firearms." § 921(a)(20). This is the so-called "unless clause" we now must interpret. As the ellipses suggest, the statute is more

complex, but the phrase as quoted presents the issue for our decision.

The parties, reflecting a similar division among various Courts of Appeals, disagree over the interpretation of the unless clause in the following circumstance. What if the State restoring the offender's rights forbids possession of some firearms, say pistols, but not others, say rifles? In one sense, he "may not . . . possess . . . firearms" under the unless clause because the ban on specified weapons is a ban on "firearms." In another sense, he can possess firearms under the unless clause because the state ban is not absolute. Compare, *e. g.*, *United States* v. *Estrella*, 104 F. 3d 3, 8 (CA1) (adopting former reading), cert. denied, 521 U. S. 1110 (1997), and *United States* v. *Driscoll*, 970 F. 2d 1472, 1480–1481 (CA6 1992) (same), cert. denied, 506 U. S. 1083 (1993), with *United States* v. *Qualls*, 140 F. 3d 824, 826 (CA9 1998) (en banc) (intermediate position), and *United States* v. *Shoemaker*, 2 F. 3d 53, 55–56 (CA4 1993) (same), cert. denied, 510 U. S. 1047 (1994).

The Government contends the class of criminals who "may not . . . possess . . . firearms" includes those forbidden to have some guns but not others. On this reading, the restoration of rights is of no effect here, the previous offenses are chargeable, and petitioner's sentence must be enhanced. On appeal, the Government's position prevailed in the Court of Appeals for the First Circuit, and we now affirm its judgment.

I

Petitioner Gerald Caron has an extensive criminal record, including felonies. In Massachusetts state court, he was convicted in 1958 of attempted breaking and entering at night and, in 1959 and 1963, of breaking and entering at night. In California state court, he was convicted in 1970 of assault with intent to commit murder and attempted murder.

In July 1993, petitioner walked into the home of Walter Miller, carrying a semiautomatic rifle. He threatened Miller,

brandished the rifle in his face, and pointed it at his wife, his daughters, and his 3-year-old grandson. Police officers disarmed and arrested petitioner.

In September 1993, a federal agent called on petitioner at home to determine if he had other unlawful firearms. Petitioner said he had only flintlock or other antique weapons (not forbidden by law) and owned no conventional firearms. Federal law, the agent told him, forbade his possession of firearms and was not superseded by state law. In December 1993, agents executed a search warrant at petitioner's house, seizing six rifles and shotguns and 6,823 rounds of ammunition.

A federal jury convicted petitioner of four counts of possessing a firearm or ammunition after having been convicted of a serious offense. See 18 U. S. C. § 922(g)(1). The District Court enhanced his sentence because he was at least a three-time violent felon, based on his one California and three Massachusetts convictions. See § 924(e). Petitioner claimed the court should not have counted his Massachusetts convictions because his civil rights had been restored by operation of Massachusetts law. Massachusetts law allowed petitioner to possess rifles or shotguns, as he had the necessary firearm permit and his felony convictions were more than five years old. Mass. Gen. Laws §§ 140:123, 140:129B, 140:129C (1996). The law forbade him to possess handguns outside his home or business. See §§ 140:121, 140:131, 269:10.

At first, the District Court rejected the claim that Massachusetts had restored petitioner's civil rights. It held civil rights had to be restored by an offender-specific action rather than by operation of law. The First Circuit disagreed, vacating the sentence and remanding the case. *United States* v. *Caron,* 77 F. 3d 1, 2, 6 (1996) (en banc). We denied certiorari. 518 U. S. 1027 (1996). On remand, the District Court, interpreting the unless clause of the federal statute, disregarded the Massachusetts convictions.

It ruled Massachusetts law did not forbid petitioner's possession of firearms because he could possess rifles. 941 F. Supp. 238, 251–254 (Mass. 1996). Though Massachusetts restricted petitioner's right to carry a handgun, the District Court considered the restriction irrelevant because his case involved rifles and shotguns. See *ibid.* The First Circuit reversed, counting the convictions because petitioner remained subject to significant firearms restrictions. We granted certiorari. 522 U. S. 1038 (1998).

## II

A federal statute forbids possession of firearms by those convicted of serious offenses. An abbreviated version of the statute is as follows:

"It shall be unlawful for any person—

"(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

.        .        .        .        .

"to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U. S. C. § 922(g).

Three-time violent felons who violate § 922(g) face enhanced sentences of at least 15 years' imprisonment. § 924(e)(1). "Violent felony" is defined to include burglary and other crimes creating a serious risk of physical injury. § 924(e)(2)(B)(ii). This term includes petitioner's previous offenses discussed above.

Not all violent felony convictions, however, count for purposes of § 922(g) or § 924(e). Until 1986, federal law alone determined whether a state conviction counted, regardless of whether the State had expunged the conviction.

*Dickerson* v. *New Banner Institute, Inc.,* 460 U. S. 103, 119–122 (1983). Congress modified this aspect of *Dickerson* by adopting the following language:

> "What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." § 921(a)(20).

The first sentence and the first clause of the second sentence define convictions, pardons, expungements, and restorations of civil rights by reference to the law of the convicting jurisdiction. See *Beecham* v. *United States,* 511 U. S. 368, 371 (1994).

Aside from the unless clause, the parties agree Massachusetts law has restored petitioner's civil rights. As for the unless clause, state law permits him to possess rifles and shotguns but forbids him to possess handguns outside his home or business. The question presented is whether the handgun restriction activates the unless clause, making the convictions count under federal law.

We note these preliminary points. First, Massachusetts restored petitioner's civil rights by operation of law rather than by pardon or the like. This fact makes no difference. Nothing in the text of § 921(a)(20) requires a case-by-case decision to restore civil rights to this particular offender. While the term "pardon" connotes a case-by-case determination, "restoration of civil rights" does not. Massachusetts has chosen a broad rule to govern this situation, and federal law gives effect to its rule. All Courts of Appeals to ad-

dress the point agree. See *Caron*, 77 F. 3d, at 2; *McGrath v. United States*, 60 F. 3d 1005, 1008 (CA2 1995), cert. denied, 516 U. S. 1121 (1996); *United States v. Hall*, 20 F. 3d 1066, 1068–1069 (CA10 1994); *United States v. Glaser*, 14 F. 3d 1213, 1218 (CA7 1994); *United States v. Thomas*, 991 F. 2d 206, 212–213 (CA5), cert. denied, 510 U. S. 1014 (1993); *United States v. Dahms*, 938 F. 2d 131, 133–134 (CA9 1991); *United States v. Essick*, 935 F. 2d 28, 30–31 (CA4 1991); *United States v. Cassidy*, 899 F. 2d 543, 550, and n. 14 (CA6 1990).

Second, the District Court ruled, and petitioner urges here, that the unless clause allows an offender to possess what state law permits him to possess, and nothing more. Here, petitioner's shotguns and rifles were permitted by state law, so, under their theory, the weapons would not be covered by the unless clause. While we do not dispute the common sense of this approach, the words of the statute do not permit it. The unless clause is activated if a restoration of civil rights "expressly provides that the person may not . . . possess . . . firearms." 18 U. S. C. § 921(a)(20). Either the restorations forbade possession of "firearms" and the convictions count for all purposes, or they did not and the convictions count not at all. The unless clause looks to the terms of the past restorations alone and does not refer to the weapons at issue in the present case. So if the Massachusetts convictions count for some purposes, they count for all and bar possession of all guns.

### III

The phrase "may not . . . possess . . . firearms," then, must be interpreted under either of what the parties call the two "all-or-nothing" approaches. Either it applies when the State forbids one or more types of firearms, as the Government contends; or it does not apply if state law permits one or more types of firearms, regardless of the one possessed in the particular case.

Under the Government's approach, a state weapons limitation on an offender activates the uniform federal ban on possessing any firearms at all. This is so even if the guns the offender possessed were ones the State permitted him to have. The State has singled out the offender as more dangerous than law-abiding citizens, and federal law uses this determination to impose its own broader stricture.

Although either reading creates incongruities, petitioner's approach yields results contrary to a likely, and rational, congressional policy. If permission to possess one firearm entailed permission to possess all, then state permission to have a pistol would allow possession of an assault weapon as well. Under this view, if petitioner, in violation of state law, had possessed a handgun, the unless clause would still not apply because he could have possessed a rifle. Not only would this strange result be inconsistent with any conceivable federal policy, but it also would arise often enough to impair the working of the federal statute. Massachusetts, in this case, and some 15 other States choose to restore civil rights while restricting firearm rights in part. The permissive reading would make these partial restrictions a nullity under federal law, indeed in the egregious cases with the most dangerous weapons. Congress cannot have intended this bizarre result.

Under petitioner's all-or-nothing argument, federal law would forbid only a subset of activities already criminal under state law. This limitation would contradict the intent of Congress. In Congress' view, existing state laws "provide less than positive assurance that the person in question no longer poses an unacceptable risk of dangerousness." *Dickerson*, 460 U. S., at 120. Congress meant to keep guns away from all offenders who, the Federal Government feared, might cause harm, even if those persons were not deemed dangerous by States. See *id.*, at 119. If federal law is to provide the missing "positive assurance," it must reach primary conduct not covered by state law. The need

for this caution is borne out by petitioner's rifle attack on the Miller family, in which petitioner used a gun permitted by state law. Any other result would reduce federal law to a sentence enhancement for some state-law violations, a result inconsistent with the congressional intent we recognized in *Dickerson*. Permission to possess one gun cannot mean permission to possess all.

Congress responded to our ruling in *Dickerson* by providing that the law of the State of conviction, not federal law, determines the restoration of civil rights as a rule. While state law is the source of law for restorations of other civil rights, however, it does not follow that state law also controls the unless clause. Under the Government's approach, with which we agree, the federal policy still governs the interpretation of the unless clause. We see nothing contradictory in this analysis. Restoration of the right to vote, the right to hold office, and the right to sit on a jury turns on so many complexities and nuances that state law is the most convenient source for definition. As to the possession of weapons, however, the Federal Government has an interest in a single, national, protective policy, broader than required by state law. Petitioner's approach would undermine this protective purpose.

As a final matter, petitioner says his reading is required by the rule of lenity, but his argument is unavailing. The rule of lenity is not invoked by a grammatical possibility. It does not apply if the ambiguous reading relied on is an implausible reading of the congressional purpose. See *United States* v. *Shabani*, 513 U. S. 10, 17 (1994) (requiring use of traditional tools of statutory construction to resolve ambiguities before resorting to the rule of lenity). For the reasons we have explained, petitioner's reading is not plausible enough to satisfy this condition.

In sum, Massachusetts treats petitioner as too dangerous to trust with handguns, though it accords this right to

law-abiding citizens. Federal law uses this state finding of dangerousness in forbidding petitioner to have any guns. The judgment of the Court of Appeals is

*Affirmed.*

JUSTICE THOMAS, with whom JUSTICE SCALIA and JUSTICE SOUTER join, dissenting.

The only limitation that Massachusetts law imposed on petitioner's possession of firearms was that he could not carry handguns outside his home or business. See *ante,* at 311. In my view, Massachusetts law did not "expressly provid[e]" that petitioner "may not . . . possess . . . firearms," 18 U. S. C. § 921(a)(20), and thus petitioner cannot be sentenced as an armed career criminal under § 924(e). Because the Court holds to the contrary, I respectfully dissent.

Petitioner's prior Massachusetts convictions qualify as violent felonies for purposes of § 924(e) only if the "restoration of [his] civil rights" by operation of Massachusetts law "expressly provide[d] that [petitioner] may not . . . possess . . . firearms." § 921(a)(20). In 1994, Massachusetts law did not expressly provide that petitioner could not possess firearms. To the contrary: Petitioner was permitted by Massachusetts law to possess shotguns, rifles, and handguns. See *ante,* at 311; Mass. Gen. Laws §§ 140:123, 140:129B, 140:129C (1996). Indeed, Massachusetts provided petitioner with a firearm identification card that enabled him to possess such firearms.* The only restriction Massachusetts law placed on petitioner's possession of firearms was that he could not carry handguns outside his home or business. See § 269:10(A). By prohibiting petitioner from pos-

---

*Petitioner was "entitled to" a firearm identification card five years after his release from prison. See Mass. Gen. Laws § 140:129B (1996); see also *Commonwealth* v. *Landry,* 6 Mass. App. 404, 406, 376 N. E. 2d 1243, 1245 (1978) (firearm identification card can be obtained as a "matter of right").

sessing only certain firearms (handguns) in only certain places (outside his home or office), Massachusetts law did not expressly provide that petitioner could not possess firearms.

The plain meaning of § 921(a)(20) thus resolves this case. The Court, however, rejects this plain meaning on the basis of "a likely, and rational, congressional policy" of prohibiting firearms possession by all ex-felons whose ability to possess certain firearms is in any way restricted by state law. *Ante,* at 315. According to the Court, Congress could not have intended the "bizarre result" that a conviction would not count as a violent felony if a State only partially restricts the possession of firearms by the ex-felon. But this would not be a bizarre result at all. Under § 921(a)(20), state-law limitations on firearms possession are only relevant once it has been established that an ex-felon's other civil rights, such as the right to vote, the right to seek and to hold public office, and the right to serve on a jury, have been restored. See 77 F. 3d 1, 2 (CA1 1996). In restoring those rights, the State has presumably deemed such ex-felons worthy of participating in civic life. Once a State makes such a decision, it is entirely rational (and certainly not bizarre) for Congress to authorize the increased sentences in § 924(e) only when the State additionally prohibits those ex-felons from possessing firearms altogether.

Moreover, as the Court concedes, its own interpretation creates "incongruities." *Ante,* at 315. Under the statute, whether a prior state conviction qualifies as a violent felony conviction under § 924(e) turns entirely on state law. Given the primacy of state law in the statutory scheme, it is bizarre to hold that the *legal* possession of firearms under state law subjects a person to a sentence enhancement under federal law. That, however, is precisely the conclusion the Court reaches in this case. It is simply not true, as the Court reasons, that federal law "must reach primary conduct not covered by state law." *Ibid.* It is entirely plausible that Congress simply intended to create stiffer penalties for

weapons possessions that are already illegal under state law. And such a purpose is consistent with the statutory direction that state law controls what constitutes a conviction for a violent felony.

I believe that the plain meaning of the statute is that Massachusetts did not "expressly provid[e]" that petitioner "may not . . . possess . . . firearms." At the very least, this interpretation is a plausible one. Indeed, both the Government and the Court concede as much. See Brief for United States 16 ("grammatically possible" to read statute to say that its condition is not satisfied if the State does permit its felons to possess some firearms); *ante*, at 316 (this "reading is not plausible enough"). Accordingly, it is far from clear under the statute that a prior state conviction counts as a violent felony conviction for purposes of § 924(e) just because the State imposes some restriction, no matter how slight, on firearms possession by ex-felons. The rule of lenity must therefore apply: "[T]he Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." *Ladner* v. *United States*, 358 U. S. 169, 178 (1958). Ex-felons cannot be expected to realize that a federal statute that explicitly relies on state law prohibits behavior that state law allows.

The Court rejects the rule of lenity in this case because it thinks the purported statutory ambiguity rests on a "grammatical possibility" and "an implausible reading of the congressional purpose." *Ante*, at 316. But the alleged ambiguity does not result from a mere grammatical possibility; it exists because of an interpretation that, for the reasons I have described, both accords with a natural reading of the statutory language and is consistent with the statutory purpose.

The plain meaning of § 921(a)(20) is that Massachusetts law did not "expressly provid[e] that [petitioner] may not . . .

possess . . . firearms." This interpretation is, at the very least, a plausible one, and the rule of lenity must apply. I would therefore reverse the judgment below.