**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

JAMES DAVID BRAILEY, JR.,
          *Defendant-Appellant.*

No. 04-30083

D.C. No.
CR-03-05136-RJB

OPINION

Appeal from the United States District Court
for the Western District of Washington
Robert J. Bryan, District Judge, Presiding

Argued and Submitted
January 10, 2005—Seattle, Washington

Filed May 19, 2005

Before: Mary M. Schroeder, Chief Judge, Susan P. Graber,
and Raymond C. Fisher, Circuit Judges.

Opinion by Chief Judge Schroeder

**COUNSEL**

Peggy Sue Juergens, Seattle, Washington, for the defendant-appellant.

John J. Lulejian and Andrew R. Hamilton, Assistant United States Attorneys, Seattle, Washington, for the plaintiff-appellee.

**OPINION**

SCHROEDER, Chief Judge:

James David Brailey appeals his conditional guilty plea conviction for being a prohibited person in possession of a

firearm in violation of 18 U.S.C. § 922(g)(9). Brailey stands convicted of a misdemeanor crime of domestic violence that would qualify him as a prohibited person. He nevertheless maintains he comes within the federal statute's exception for persons convicted of misdemeanors who have had their "civil rights restored." *See* 18 U.S.C. § 921(a)(33)(B)(ii). He claims that his rights have been "restored" because the Utah statutes, as amended in 2000, provide that persons convicted of misdemeanors are no longer prevented from possessing a firearm under Utah state law. *See* Utah Code Ann. § 76-10-503 (2004).

We agree with the district court that the state statutory amendment did not "restore" Brailey's "civil rights" within the meaning of the federal law. We therefore affirm the conviction.

The background is not complicated. Brailey was originally convicted of aggravated assault in the third degree, a felony under Utah Code Ann. § 76-5-103 (2004). His guilty plea admitted he assaulted his wife. An assault against a co-habitant comes within the Utah definition of a crime of "domestic violence." Utah Code Ann. § 77-36-1(2). He completed his sentence in 1996. In 1997, the Utah court granted his petition to reduce his felony conviction to a class A misdemeanor assault pursuant to Utah Code Ann. § 76-3-402.

In 1997, no person convicted of a crime of violence under Utah law, whether a misdemeanor or felony, could possess a dangerous weapon. Three years later, in 2000, however, the Utah legislature changed its law to permit a person convicted of a misdemeanor to possess a firearm. Utah Code Ann. § 76-10-503 (2004). Thus Brailey now stands convicted of a misdemeanor crime of domestic violence under Utah law, and his possession of a firearm did not violate Utah law. The issue here is whether it violated federal law.

**[1]** The federal statute of which Brailey stands convicted provides, in relevant part, as follows:

> It shall be unlawful for any person who has been convicted in any court of a misdemeanor crime of domestic violence, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition . . . .

18 U.S.C. § 922(g)(9) (2004). The definition of "misdemeanor crime of domestic violence" contains an exception which, in relevant part, states:

> A person shall not be considered to have been convicted of such an offense for purposes of this chapter if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(33)(B)(ii) (2004). The legal issue is whether Brailey's conviction of a misdemeanor crime of domestic violence has been "expunged or set aside, or is an offense for which [he] has been pardoned or has had civil rights restored." There is no issue with respect to the legal effect of the reduction of the conviction from a felony to misdemeanor.

[2] Brailey's misdemeanor conviction has not been expunged or set aside, and he has not been pardoned. Brailey argues that he comes within the language of the exception for one who has had "civil rights restored." One can qualify for that exception only if the applicable state law provided for the loss of civil rights upon conviction in the first place. Under the language of the federal statute, a central question thus becomes whether the law of Utah ever provided for the loss of civil rights for misdemeanor convictions.

**[3]** Brailey's misdemeanor conviction did not deprive him of the right to vote. The Utah Constitution, art. IV, § 6 provides that only those convicted of a felony, treason, or voter fraud lose that right. Nor did he lose the right to sit as a juror. Under Utah Code Ann. § 78-46-7, only convicted felons lose the right to serve as jurors. Nor did he lose the right to hold public office, essentially for the same reason. *See* Utah Code Ann. § 20A-9-203(1)(c) ("[A]ny person convicted of a felony, or any person convicted of treason or a crime against the elective franchise may not hold office in this state until the right to . . . hold elective office is restored as provided by statute"). The district court therefore correctly stated that when Brailey's conviction was changed from a felony to a misdemeanor crime of domestic violence in 1997, he "did not lose any 'core civil rights', (the right to vote, the right to serve on a jury, and the right to hold public office)." Thus, Brailey's civil rights could not have been "restored" in 2000 within the meaning of the federal exception because his misdemeanor conviction had not resulted in the loss of his civil rights as expressly required to qualify for the federal exception.

**[4]** Brailey relies on the Supreme Court's decision in *Caron v. United States*, 524 U.S. 308, 313-14 (1998), in which the Court interpreted a statute that contains language different from the provision we are now required to interpret. *Caron* establishes, however, that while the restoration of civil rights enjoyed under state law by persons convicted of crimes is governed by state law, federal law governs whether a person's possession of a firearm violates a federal statute.

Citing from *Caron*, Brailey argues that the 2000 amendment to Utah law (allowing misdemeanants to possess firearms) is a state law to which the federal law must give "full effect." *Caron* decided that the defendant could be convicted of possession of a firearm, in his case a rifle, under federal law, even though his possession of the rifle was permitted under state law. *Caron*'s holding, therefore, is that federal

law, not state law, controls the right of a defendant to bear a firearm under a federal statute.

[5] Most of the other circuits to have addressed the question before us have concluded, as we do, that in states where civil rights are not divested for misdemeanor convictions, a person convicted of a misdemeanor crime of domestic violence cannot benefit from the federal restoration exception. *See United States v. Jennings*, 323 F.3d 263, (4th Cir.), *cert. denied*, 540 U.S. 1005 (2003); *United States v. Barnes*, 295 F.3d 1354 (D.C. Cir. 2002); *United States v. Smith*, 171 F.3d 617 (8th Cir. 1999). As the Fourth Circuit noted in *Jennings*, the common definition of the word "restore" means " 'to give back (as something lost or taken away).' " 323 F.3d at 267 (quoting *McGrath v. United States*, 60 F.3d 1005, 1007 (2d Cir. 1995)). When a defendant's "civil rights were never taken away, it is impossible for those civil rights to have been 'restored.' " *Id.* As these courts have also observed, misdemeanants whose civil rights are never revoked can still qualify for the exception of § 921(a)(33) by the other enumerated methods of absolution, such as expungement or pardon. *Barnes*, 295 F.3d at 1368; *see also Jennings*, 323 F.3d at 275 (stating that the defendant "has other avenues he can pursue to fall within the . . . exception of 18 U.S.C. § 921(a)(33)(B)(ii)"). Consequently, we agree with those circuits holding that, in states where civil rights are not removed for a misdemeanor conviction of a crime of domestic violence, an individual convicted of such a misdemeanor "cannot benefit from the federal restoration exception." *Smith*, 171 F.3d at 623.

One circuit has disagreed, seeing an inconsistency in a scheme that bars misdemeanants who have never had their civil rights removed from possessing a gun, but allowing those who have had their rights removed, but then restored, to possess a gun. *See United States v. Wegrzyn*, 305 F.3d 593, 595 (6th Cir. 2002) (holding that misdemeanants under Michigan law cannot be convicted under 18 U.S.C. § 921(a)(33)

(B)(ii) because their civil rights were never lost). We do not believe this reasoning is sound. Not all persons convicted of a misdemeanor become prohibited persons; only those convicted of a misdemeanor crime of domestic violence are persons prohibited from possessing guns. Such persons have been found guilty of violent behavior in a domestic setting, and Congress could reasonably conclude that weapons markedly increase the risk of serious injury in such situations. Moreover, we agree with the Fourth Circuit that it is reasonable for persons who have benefitted from a state procedure to determine their fitness to exercise civil rights to be permitted to bear arms under federal law. "Congress reasonably could [have concluded] that misdemeanants who had been through a state's restoration process and had regained their civil rights were more fit to own firearms than misdemeanants who had not lost their civil rights, had not had their convictions expunged, or had not been pardoned." *Jennings*, 323 F.3d at 275.

**[6]** Because Brailey's misdemeanor conviction did not remove Brailey's core civil rights of voting, serving as a juror, or holding public office, his civil rights have not been "restored" within the meaning of federal law by Utah's 2000 amendment permitting him to possess a firearm. Under federal law, a conviction for a misdemeanor crime of domestic violence makes firearm possession a federal crime. Brailey stands convicted of such a misdemeanor crime of domestic violence and he was properly charged with committing a federal crime.

The judgment of the district court is AFFIRMED.