[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-15360

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 6, 2011
JOHN LEY
CLERK

D. C. Docket No. 2:10-cr-00081-WKW-WC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE ARTURO MARTINEZ-GONZALEZ,
a.k.a. Adrian Cortez,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(December 6, 2011)

Before DUBINA, Chief Judge, COX, Circuit Judge, and HUNT,[*] District Judge.

PER CURIAM:

---

[*] Honorable Willis B. Hunt, Jr., Senior United States District Judge for the Northern District of Georgia, sitting by designation.

Jose Arturo Martinez-Gonzalez appeals the sentence he received for his conviction for illegal reentry after deportation by an alien previously convicted of a felony in violation of 8 U.S.C. § 1326(b)(1). Martinez-Gonzalez argues that his sentence is excessive because (1) the district court erred in treating an earlier conviction for possession of forged documents as an aggravated felony, resulting in an eight-level increase to his base offense level under the Sentencing Guidelines and (2) the district court failed to appropriately consider the 18 U.S.C. § 3553(a) sentencing factors.

Having considered the parties' arguments, we affirm.

## I. BACKGROUND

Martinez-Gonzalez is a Mexican national who initially entered the United States approximately eleven years ago. In 2008, in the Circuit Court of Montgomery County, Alabama, he was convicted of two counts of possession of forged instruments – a forged permanent resident card and a forged Social Security card – with the intent to defraud in violation of Ala. Code § 13A-9-6 (1975). He received a two-year sentence, most of which was suspended, and he was subsequently deported to Mexico. He returned to the United States without the permission of the Attorney General and was ultimately convicted after his guilty plea in this case of illegally re-

entering the United States in violation of 8 U.S.C. §§ 1326(a), which imposes criminal penalties on any alien who has been deported and who thereafter "enters, attempts to enter, or is at any time found in, the United States" without receiving permission of the Attorney General.

According to § 2L1.2(a) of the Sentencing Guidelines, the base offense level for illegally re-entering the United States is eight. However, "[i]f the defendant previously was deported, or unlawfully remained in the United States, after . . . a conviction for an aggravated felony," the base offense level is increased by eight levels. According to Application Note 3(A) of U.S.S.G. § 2L1.2(b), "'aggravated felony' has the meaning given that term in [8 U.S.C. § 1101(a)(43)], without regard to the date of conviction for the aggravated felony." The definition of aggravated felony under § 1101(a)(43) includes "an offense relating to . . . forgery . . . for which the term of imprisonment is at least one year."

At the sentencing hearing, the district court concluded that Martinez-Gonzalez' conviction for possession of a forged instrument with the intent to defraud constituted an aggravated felony and, over Martinez-Gonzalez' objection, increased the base offense level by eight levels. After reductions for acceptance of responsibility and for substantial assistance to the Government, the district court arrived at an offense level of 12 and a criminal history category of IV, resulting in a guidelines range of

21 to 27 months in prison. Martinez-Gonzalez argued for a downward departure and a sentence of time-served because the guidelines range for his sentence was too harsh and because his criminal history category overstated his criminal background. The district court declined to grant a downward departure and imposed a sentence of 24 months after a discussion of the relevant sentencing factors set out at 18 U.S.C. § 3553(a).

Martinez-Gonzalez now argues that the district court erred in concluding that his convictions for mere possession of a forged document constituted offenses "relating to" forgery under 8 U.S.C. § 1101(a)(43)(R). According to Martinez-Gonzalez, "forgery," as that term is historically understood at common law, means the manufacture or production of forged items, and merely possessing forged documents does not amount to committing a crime relating to forgery. He further asserts that § 1101(a)(43)(R) is ambiguous and that the rule of lenity thus requires that the ambiguity be construed in his favor. Martinez-Gonzalez finally argues that his sentence was not substantively reasonable because the district court did not properly consider the § 3553(a) sentencing factors.

## II. DISCUSSION[1]

*A. Crimes "Relating to" Forgery under 8 U.S.C. § 1101(a)(43)(R)*

We hold that the violation of a state law proscribing the possession of a forged document with the intent to defraud is a crime related to forgery under § 1101(a)(43)(R). The other circuits considering this question – either in this context or in the context of an alien challenging an order of removal – agree. United States v. Chavarria-Brito, 526 F.3d 1184, 1186 (8th Cir. 2008) ("conviction for the possession of a false document with the intent to perpetrate a fraud" constitutes an aggravated felony under U.S.S.G. § 2L1.2(b)(1)(C)); Richards v. Ashcroft, 400 F.3d 125, 130 (2d Cir. 2005); Albillo-Figueroa v. INS, 221 F.3d 1070 (9th Cir. 2000). In addition, both the Fifth and Third Circuits have issued unpublished opinions reaching the same conclusion. United States v. Martinez-Valdez, 419 Fed. Appx. 523 (5th Cir. 2011) (affirming the application of the § 2L1.2(b)(1)(C) eight-level enhancement because of criminal defendant's conviction for possessing a forged document); Apanpa v. Attorney General of U.S., 276 Fed. Appx. 227, 229 (3d Cir. 2008) (immigration petitioner's "conviction for criminal possession of a forged instrument in the second degree is an offense relating to forgery" under § 1101(a)(43)(R)).

---

[1] "We review a district court's application of the guidelines to the facts *de novo*." U.S. v. Kinard, 472 F.3d 1294, 1297 n.3 (11th Cir. 2006).

5

Indeed, Martinez-Gonzalez has not cited to, and we could not independently locate, a case holding that possession of a forged document was not a crime related to forgery.

Martinez-Gonzalez' argument that precedent from civil immigration cases should not guide us is unavailing. Section 2L1.2(b) of the Guidelines references and specifically adopts the civil standard from the deportation provisions of the Immigration and Nationality Act. Thus § 2L1.2(b) requires courts in criminal actions to apply the same standard it would in a civil immigration case.

We further conclude that the rule of lenity[2] does not require a different result. While the phrase "relating to" may be open to some interpretation, the rule of lenity is "not invoked by a grammatical possibility." Caron v. United States, 524 U.S. 308, 316, 118 S. Ct. 2007, 2012, 141 L. Ed. 2d 303 (1998). Rather, we must first apply the traditional tools of statutory construction to interpret § 1101(a)(43)(R) before resorting to the rule of lenity. United States v. Shabani, 513 U.S. 10, 17, 115 S. Ct. 382, 386, 130 L. Ed. 2d 225 (1994). Only if, "after seizing everything from which aid can be derived, . . . we can make no more than a guess as to what Congress intended"

---

[2] See United States v. Santos, 553 U.S. 507, 514, 128 S. Ct. 2020, 170 L. Ed. 2d 912 (2008) ("The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them").

do we apply the rule. Muscarello v. United States, 524 U.S. 125, 118 S. Ct. 1911, 1919, 141 L. Ed. 2d 111 (1998) (citations and internal quotation marks omitted).

A common sense reading of § 1101(a)(43)(R) leads us to the conclusion that the statute is not ambiguous in the context of this case. Congress enacted the provision with the obvious intent of curbing the use of forged documents by aliens, which is what Martinez-Gonzalez was convicted of doing. Further, even if we were to concede some ambiguity in determining whether a particular state law crime related to forgery, we would next apply the categorical approach adopted by the Supreme Court in Taylor v. United States, 495 U.S. 575, 110 S. Ct. 2143, 109 L. Ed. 2d 607 (1990); see United States v. Palomino Garcia, 606 F.3d 1317, 1336 (11th Cir. 2010) ("Generally, we apply Taylor's categorical approach in determining whether a prior conviction is a qualifying offense for sentencing enhancement purposes."). Under the categorical approach, "we consider the offense as defined by the law, rather than considering the facts of the specific violation." United States v. Archer, 531 F.3d 1347, 1350 (11th Cir. 2008). Our goal is to "determine whether the convicted crime falls within the generic, federal definition of the enumerated offense," United States v. Ramirez-Garcia, 646 F.3d 778, 782 (11th Cir. 2011), which is not limited by the traditional common law definition for that offense. Taylor, 495 U.S. at 598, 110 S. Ct. at 2158.

7

Ala. Code § 13A-9-6 – the statute under which Martinez-Gonzalez was convicted – states that "[a] person commits the crime of criminal possession of a forged instrument in the second degree if he possesses or utters any forged instrument . . . with knowledge that it is forged and with intent to defraud." Martinez-Gonzalez points out that the traditional common law definition of forgery is the manufacture of forged instruments and argues that his conviction for possessing a forged instrument should thus not qualify as a crime "relating to" forgery. However, in modern usage, the concept of forgery is broader. For example, the Model Penal Code states that a "person is guilty of forgery if , with purpose to defraud . . . the actor . . . utters any writing which he knows to be forged." Model Penal Code § 224.1(1)(c). Additionally, Chapter 25 of Title 18 of the United States Code contains numerous statutes that criminalize various acts of forgery and counterfeiting, with each code section referring to specific types of documents or counterfeiting tools. 18 U.S.C. § 470 et seq. This Court has reviewed those statutes, and the vast majority of them proscribe uttering and/or possessing forged instruments or the equipment used to create those instruments. E.g., 18 U.S.C. §§ 470, 472, 473, 474, 474A, 475, 477, 479, 480, 481, 483, 485, 486, 487, 488, 489, 490, 493, 494, 495, 496, 497, 498.

On a related topic, Martinez-Gonzalez' arguments regarding 8 U.S.C. § 1101(a)(43)(P) actually weigh in the Government's favor. That provision characterizes as an aggravated felony

> an offense (i) which either is falsely making, forging, counterfeiting, mutilating, or altering a passport or instrument in violation of section 1543 of title 18, United States Code, or is described in section 1546(a) of such title (relating to document fraud) and (ii) for which the term of imprisonment is at least 12 months . . . .

While the first code section that § 1101(a)(43)(P) references, 18 U.S.C. § 1543, relates to the actual manufacture of a forged passport or other document, the other referenced statute, § 1546(a) is probably the federal crime most analogous to the one committed by Martinez-Gonzalez. It is a felony under 18 U.S.C. § 1546(a) for anyone who

> utters, uses, attempts to use, possesses, obtains, accepts, or receives any such visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, knowing it to be forged, counterfeited, altered, or falsely made, or to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained . . . .

All of these federal forgery statutes generally mirror Ala. Code § 13A-9-6 in every material way, and, under the categorical approach required by Taylor, we can conclude only that Martinez-Gonzalez' conviction was related to forgery such that the increased offense level under U.S.S.G. § 2L1.2(b) applies.

9

*B. Reasonableness of Martinez-Gonzalez' Sentence under 18 U.S.C. § 3553(a)*

Having resolved Martinez-Gonzalez' assertion of a procedural error in calculating his sentence, we now consider his claim that the sentence was substantively unreasonable. In making this determination, we consider the factors outlined in 18 U.S.C. § 3553(a) and the district court's reasons for imposing the sentence. United States v. Williams, 435 F.3d 1350, 1355 (11th Cir. 2006). In applying the § 3553(a) factors to a sentence, "[t]he weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court, and we will not substitute our judgment in weighing the relevant factors." United States v. Amedeo, 487 F.3d 823, 832 (11th Cir. 2007) (quotation marks, alterations, and citation omitted).

"In our evaluation of a sentence for reasonableness, we recognize that there is a range of reasonable sentences from which the district court may choose, and when the district court imposes a sentence within the advisory Guidelines range, we ordinarily will expect that choice to be a reasonable one." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). Because the district court imposed a sentence within the Guidelines range, the court need only "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." Rita v. United States, 551

U.S. 338, 356, 127 S. Ct. 2456, 2468, 168 L. Ed. 2d 203 (2007). To determine whether the district court has properly considered Martinez-Gonzalez' arguments and the § 3553(a) factors, we review the court's statements at the sentencing hearing. See Williams, 435 F.3d at 1355.

Martinez-Gonzalez argues that his sentence is substantively unreasonable because the court failed to appropriately consider (1) that Martinez-Gonzalez has been incarcerated in local jails since 2009, (2) that Martinez-Gonzalez' immigration status extended his time in state custody, (3) that at the conclusion of his sentence, Martinez-Gonzalez will be separated from his family and face financial hardship when he is deported to Mexico, and (4) that he will be confined by the immigration services after his release from prison until he is deported.[3]

In imposing the sentence, however, the judge specifically discussed the § 3553(a) factors in determining the sentence. According to the judge, the sentence was appropriate given "the nature and circumstances of the offense and the history and characteristics of this defendant," and was necessary

> to reflect the seriousness of the offense and to promote respect, as the Government said, for immigration law and for our criminal laws of the

---

[3] In a footnote, Martinez-Gonzalez engages in a lengthy discussion of the disparity of sentences between criminal aliens inside and outside of "fast-track" jurisdictions. As Martinez-Gonzalez acknowledges, however, any claim regarding this disparity is squarely foreclosed by our decision in United States v. Vega-Castillo, 540 F.3d 1235 (11th Cir. 2008).

United States and to provide just punishment for the offense . . . and to afford adequate deterrence to criminal conduct and to avoid unwarranted sentence disparities among defendants.

(Sentencing Transcript at 51-52).

The district court disagreed with Martinez-Gonzalez' arguments that the criminal history category overstated his record because he presented no evidence to the contrary. (Id. at 49). Indeed, the district court found that Martinez-Gonzalez' history of arrests and convictions was "compelling evidence of [his] propensity to recidivate." (Id.).

The record further demonstrates that the district court considered Martinez-Gonzalez' personal circumstances. The court noted the absence of evidence that Martinez-Gonzalez paid income taxes or child support while he was working and pointed out the fact that "the evidence with respect to his family is not good. I have three domestic assaults, the last of which was that he was intoxicated and struck his – the mother of his children in the face." (Id. at 49-50). The court summarized by stating,

So what I have is . . . evidence of disrespect for women, including the mother of his own children; I have drunkenness; I have possession of forged instruments; lying to police officers; possession of one pill, at least, illegally; being in a vehicle with a switched tag; and entering or reentering the country illegally at least four times, the last time after having been deported, and coming back in only a few months.

12

(Id. at 50-51).

Given the foregoing, it appears that the district court amply supported its sentencing decision in the record and that the sentence imposed was reasonable and well within the judge's discretion. In summary, there appears to be no basis upon which to vacate Martinez-Gonzalez' sentence.

### III. CONCLUSION

For the above stated reasons, we affirm Martinez-Gonzalez' sentence.

**AFFIRMED**.