GRIMES, J., Dissenting.
The context in which we are called upon to independently review whether plaintiff may seek reinstatement as a deputy sheriff after the United States Supreme Court issued its opinion in United States v. Hayes (2009) 555 U.S. 415 [172 L.Ed.2d 816, 129 S.Ct. 1079] (Hayes) necessarily informs my analysis. This court does not bring its independent judgment to bear on the interpretation of Hayes in a contextual bell jar or in the intellectual ether. The issue before us arose in the real world context of county counsel having to analyze the effect of Hayes on county employees whose duties require them to bear arms, and to advise whether Hayes required the Los Angeles County Sheriff’s Department (Department) to discharge any deputy who has been convicted of an assault or battery upon a domestic victim.[1]
In analyzing the effect of Hayes, county counsel must have known that if they concluded Hayes required discharge, the county might suffer the loss of one or more valuable deputies (and perhaps other county employees), and might incur the costs of defending the discharge in civil service commission proceedings or in court. On the other hand, could county counsel prudently advise that, based on questions raised in conflicting federal circuit court opinions about the reach of the Gun Control Act of 1968, title 18 United States Code section 921 et seq.,[2] or based on subtle distinctions between California’s battery law and other states’ battery laws, the county had no realistic risk of liability in a civil rights or other lawsuit, an audit, or other state or federal governmental or citizens’ oversight action if the county were to ignore the lifetime firearms ban on law enforcement officers convicted of misdemeanor battery on a domestic victim?
*17 After considering all the issues discussed in the majority opinion, I am not persuaded that Hayes permits the Department to lawfully employ Deputy Mark Shirey. I find nothing in the letter or spirit of Hayes to suggest a person convicted of misdemeanor battery on a domestic victim may continue to possess guns, on the basis of the distinctions drawn by the majority. In my exercise of independent judgment, I would affirm, finding the trial court correctly concluded the United States Supreme Court opinion in Hayes established that plaintiff’s battery conviction qualifies as a “misdemeanor crime of domestic violence” under the Gun Control Act of 1968, plaintiff failed to obtain an expungement of the conviction within the meaning of federal law, and the Department did not abuse its discretion in determining the federal gun possession ban applied to plaintiff. (§ 922(g)(9).)
Plaintiff seeks reinstatement on two bases: (1) a battery conviction under Penal Code section 242 does not constitute a misdemeanor crime of domestic violence under the Gun Control Act of 1968 because a conviction under Penal Code section 242 does not require the use of “physical force” within the meaning of the federal statute, and (2) plaintiff obtained a qualifying ex-pungement under federal law. The majority agrees with plaintiff that a conviction under Penal Code section 242 does not qualify as a predicate misdemeanor crime of domestic violence under the federal Gun Control Act of 1968. The majority concludes therefore the federal firearms prohibition does not apply to plaintiff, and the Department’s discharge decision, based solely on that premise, must be set aside.
The Gun Control Act of 1968 prohibits certain individuals, including those who have been convicted of a felony, from possessing firearms on several enumerated bases. (Hayes, supra, 555 U.S. at p. 418.) The Lautenberg Amendment (Pub.L. No. 104-208 (Sept. 30, 1996) 110 Stat. 3009) extended the federal firearms prohibition to include individuals convicted of “ ‘a misdemeanor crime of domestic violence.’ ” (Hayes, at p. 418; see § 922(g)(9).)
The federal statute, in relevant part, defines “misdemeanor crime of domestic violence” as any conviction which “(i) is a misdemeanor under Federal, State, or Tribal law; and [f] (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon.” (§ 921(a)(33)(A), italics added & fn. omitted.) Penal Code section 242 contains language substantially similar to the federal definition: “A battery is any willful and unlawful use of force or violence upon the person of another.” (Pen. Code, § 242, italics added.)
*18 While the Hayes court was not squarely presented with the question of defining the phrase “use of physical force” in the Gun Control Act of 1968, nothing in the Hayes opinion suggests the court was of the view that a “misdemeanor crime of domestic violence” was intended to cover only convictions based on violent acts. Indeed, the opinion reads to the contrary.
The defendant in Hayes was prosecuted for violating the federal firearms prohibition at section 922(g)(9). (Hayes, supra, 555 U.S. at pp. 418—419.) He had been convicted of battering his then wife under a generic West Virginia battery statute with a broad scope similar to that of Penal Code section 242. The West Virginia statute provided: “ ‘[A]ny person [who] unlawfully and intentionally makes physical contact of an insulting or provoking nature with the person of another or unlawfully and intentionally causes physical harm to another person, . . . shall be guilty of a misdemeanor.’ ” (Hayes, at p. 419, fn. 1.)
The specific question before the Hayes court was whether the domestic relationship had to be an element of the underlying penal statute on which the predicate conviction was based. Hayes held that while a domestic relationship must be proved beyond a reasonable doubt in a prosecution under section 922(g)(9), the domestic relationship need not be an express element of the underlying statute. (Hayes, supra, 555 U.S. at pp. 418, 426.) Nothing in the language of the Hayes opinion remotely hints that a conviction under the broad West Virginia statute, one which could be violated without the use of violent force, did not satisfy the federal definition of a “misdemeanor crime of domestic violence.”
Elucidating on its rationale that a conviction under a generic battery statute suffices to establish a predicate “misdemeanor crime of domestic violence,” the Hayes court stated: “[I]t seems to us ‘most natural’—to read § 921(a)(33)(A) to convey that a person convicted of battering a spouse or other domestic victim has committed a ‘crime of domestic violence ....’” (Hayes, supra, 555 U.S. at p. 426, fn. 7.) And, although the definition of the phrase “use of physical force” in section 921(a)(33)(A) was not the issue to be resolved by the Hayes court, I do not conclude as a consequence that it may have escaped the attention of the justices that a person could be convicted of battering a domestic victim in West Virginia without the use of violent force.
Hayes also relied on the legislative history behind the Lautenberg Amendment. (Hayes, supra, 555 U.S. at pp. 426-428.) Specifically, Hayes noted the statutory definition of a “misdemeanor crime of domestic violence” was amended to delete the phrase “ ‘crime of violence’ ” and replace it with the *19 definition requiring only the use or attempted use of physical force. (Id. at p. 428.) Hayes explained the “manifest purpose” behind the Lautenberg Amendment was to “ ‘close [a] dangerous loophole’ ” (Hayes, at pp. 427, 426) allowing domestic abusers convicted under generic statutes or convicted only of misdemeanors from falling outside of the federal firearms prohibition. The legislative history and purpose behind the amendment do not support the majority’s conclusion that a misdemeanor crime of domestic violence must involve violent conduct to fall within the firearms ban of the Gun Control Act of 1968. (See, e.g., U.S. v. Daas (1999) 198 F.3d 1167, 1174 [where statute is ambiguous “courts may look to its legislative history for evidence of congressional intent”].)
Further, the federal definition includes the language “attempted use of physical force.” Since a conviction for a mere attempted use of physical force qualifies as a misdemeanor crime of domestic violence under the federal statute, whereas plaintiff here was convicted under a statute requiring an actual use of force, I disagree that a “misdemeanor crime of domestic violence” is properly construed as requiring violent conduct.
The majority relies heavily on Johnson v. United States (2010) 559 U.S. 133 [176 L.Ed.2d 1, 130 S.Ct. 1265] (Johnson). But Johnson concerned the interpretation of the phrase “use or attempted use of physical force” as used in a separate federal statute: the Armed Career Criminal Act of 1984 (Pub.L. No. 98-473, tit. II, ch. XVIII (§ 1801 et seq.) (Oct. 12, 1984) 98 Stat. 2185). (See § 924(e).) More specifically, the Johnson court stressed that it was construing Congress’s use of that phrase within the context of defining a “violent felony.” (559 U.S. at pp. 140-143 [130 S.Ct. at pp. 1271-1272].)
The Johnson court expressly declined to state the same construction should be imparted to the phrase used in other federal statutes such as the Gun Control Act of 1968. “We have interpreted the phrase ‘physical force’ only in the context of a statutory definition of ‘violent felony.’ We do not decide that the phrase has the same meaning in the context of defining a misdemeanor crime of domestic violence. The issue is not before us, so we do not decide it.” (Johnson, supra, 559 U.S. at p. 144 [130 S.Ct. at p. 1273].) This language in Johnson makes clear the Supreme Court finds it is more important to discern the congressional intent of each particular federal statute than to establish a uniform federal definition of the phrase “physical force.” And, recall, the Hayes court rested its holding in part on the congressional intent to extend the gun possession ban to all those convicted of assault or battery on a domestic victim because of the “potentially deadly combination” of guns and domestic strife. (Hayes, supra, 555 U.S. at pp. 426-428.)
*20 Simply because Congress used the phrase “physical force” in a number of related federal statutes does not evince a clear intent to imbue the phrase with the same meaning in each of those separate statutory schemes. The phrase must be read in the context of the overall statutory scheme of which it is a part so as to not lead to absurd results. In construing a federal statute, “ ‘we look first to the plain language of the statute, construing the provisions of the entire law, including its object and policy, to ascertain the intent of Congress.’ [Citation.]” (U.S. v. Mohrbacher (9th Cir. 1999) 182 F.3d 1041, 1048; accord, U.S. v. Daas, supra, 198 F.3d at p. 1174 [“To determine the plain meaning of a particular statutory provision, and thus congressional intent, the court looks to the entire statutory scheme.”].)
In the Gun Control Act of 1968, the phrase “use or attempted use of physical force” is used in the context of defining a misdemeanor. (§ 921(a)(33)(A).) In the context of a misdemeanor crime of domestic violence, construing “physical force” as requiring a heightened or violent level of physical force, and thus precluding conviction for battery of a domestic victim under a general battery statute like Penal Code section 242 from qualifying as a predicate conviction, is an absurd result. “We interpret a statute ‘to avoid untenable distinctions and unreasonable results whenever possible.’ [Citations.]” (Mester Manufacturing Co. v. INS (9th Cir. 1989) 879 F.2d 561, 567; see U.S. v. Daas, supra, 198 F.3d at p. 1174.)
As Hayes explained, domestic abusers are often prosecuted under general assault or battery statutes, and Congress could not have intended to preclude individuals who suffer convictions under those types of statutes from being brought within the ambit of the federal firearms prohibition. (Hayes, supra, 555 U.S. at pp. 426-428.) Plaintiff’s battery conviction under Penal Code section 242 qualifies as a predicate “misdemeanor conviction of domestic violence” within the meaning of section 922(g)(9). (See People v. Delacy (2011) 192 Cal.App.4th 1481, 1492 [122 Cal.Rptr.3d 216] [disagreeing with characterization of a Pen. Code, § 242 battery as a nonviolent offense, in rejecting constitutional challenge to imposition of state firearms ban based on a § 242 conviction].)
Moreover, plaintiff has failed to show he obtained a qualifying expungement within the meaning of the federal statute. Because the majority agreed with plaintiff’s first contention, they did not reach this second argument. The Gun Control Act of 1968 expressly provides that a person shall not be considered to have suffered a conviction for a misdemeanor crime of domestic violence “if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights *21 restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.” (§ 921(a)(33)(B)(ii).)
It is undisputed that, under California law, plaintiff’s battery conviction has been set aside and the criminal complaint against plaintiff dismissed pursuant to Penal Code section 1203.4, that the court granted plaintiff relief from the state firearms prohibition related to his battery conviction under former section 12021 (now § 29805), and that the California Department of Justice, Bureau of Firearms issued plaintiff a firearms eligibility notification. However, plaintiff has not shown that this relief, obtained under state law, satisfies the Gun Control Act of 1968’s requirement for a qualifying expungement under federal law.
From the plain language of the statute, Penal Code section 1203.4 is not an expungement statute, as it does not render the prior conviction a legal nullity for all purposes. (See People v. Frawley (2000) 82 Cal.App.4th 784, 791 [98 Cal.Rptr.2d 555].) It contains “numerous and substantial” limitations on the nature of relief afforded, including that any conviction set aside may be used in a subsequent prosecution of the individual. (Ibid.)
In relevant part, Penal Code section 1203.4, subdivision (a)(1) provides: “In any case in which a defendant has fulfilled the conditions of probation for the entire period of probation, ... the defendant shall, at any time after the termination of the period of probation, if he or she is not then serving a sentence for any offense, on probation for any offense, or charged with the commission of any offense, be permitted by the court to withdraw his or her plea of guilty or plea of nolo contendere and enter a plea of not guilty; or, if he or she has been convicted after a plea of not guilty, the court shall set aside the verdict of guilty; and, in either case, the court shall thereupon dismiss the accusations or information against the defendant and except as noted below, he or she shall thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been convicted[.] . . . However, in any subsequent prosecution of the defendant for any other offense, the prior conviction may be pleaded and proved and shall have the same effect as if probation had not been granted or the accusation or information dismissed. The order shall state, and the probationer shall be informed, that the order does not relieve him or her of the obligation to disclose the conviction in response to any direct question contained in any questionnaire or application for public office, for licensure by any state or local agency, or for contracting with the California State Lottery Commission.”
*22 The statute was amended to include express language stating that relief granted pursuant thereto did not permit firearm possession. “Dismissal of an accusation or information pursuant to this section does not permit a person to own, possess, or have in his or her custody or control any firearm or prevent his or her conviction under Chapter 2 (commencing with Section 29800)[3] of Division 9 of Title 4 of Part 6.” (Pen. Code, § 1203.4, subd. (a)(2).) Thus, Penal Code section 1203.4 does not obliterate or annul a conviction. (See Black’s Law Diet. (9th ed. 2009) p. 662, col. 2 [“expunge” means “[t]o erase or destroy”]; see also People v. Field (1995) 31 Cal.App.4th 1778, 1786 [37 Cal.Rptr.2d 803] [expungement results in the “ ‘ “eradication of a record of conviction .... It is not simply the lifting of disabilities .... It is rather a redefinition of status, a process of erasing the legal event of conviction or adjudication and thereby restoring to the regenerative offender his status quo ante.” ’ ”].)
Because of these unequivocal limitations on the relief afforded by Penal Code section 1203.4, federal courts have held that a set-aside order and dismissal of a complaint pursuant to section 1203.4, like the relief obtained by plaintiff, does not completely obliterate or remove the effects of the conviction for purposes of the federal firearm prohibition. (See U.S. v. Andrino (9th Cir. 1974) 497 F.2d 1103; Jennings v. Mukasey (9th Cir. 2007) 511 F.3d 894.)
With regard to a convicted individual’s right to possess firearms, “the Federal Government has an interest in a single, national, protective policy, broader than required by state law.” (Caron v. United States (1998) 524 U.S. 308, 316 [141 L.Ed.2d 303, 118 S.Ct. 2007].) By enacting section 922(g)(9), Congress acted within its authority to impose a lifetime firearms ban for individuals convicted of misdemeanor crimes of domestic violence, except in the event of a pardon, expungement or qualifying restoration of civil rights. Plaintiff has not demonstrated that the state law relief he obtained falls within any of the limited exceptions to the federal ban on possessing a firearm. That plaintiff is permitted to possess a firearm under California law does not supersede the prohibition under federal law.
Because plaintiff has failed to show he is not subject to the federal firearms prohibition, I would affirm the trial court’s denial of his writ petition. One may debate whether the rule we must follow is fair as applied to Deputy Shirey. However, I do not perceive a trend in federal law to construe Hayes so as to relax restrictions oii gun possession; quite the opposite. The majority *23 opinion has the potential to misguide the judgment of the many lawyers and government officials who have to deal firsthand with the Gun Control Act of 1968, and the judges who have to handle the litigation which may ultimately develop.
The petition of real party in interest for review by the Supreme Court was denied August 21, 2013, S211414. Werdegar, J., did not participate therein.

 “[T]he test of the quality of an opinion is the light it casts, outside the four comers of the particular lawsuit, in guiding the judgment of the hundreds of thousands of lawyers and government officials who have to deal at first hand with the problems of everyday life and of the thousands of judges who have to handle the great mass of the litigation which ultimately develops.” (Hart, Foreword: The Time Chart of the Justices (1959) 73 Harv. L.Rev. 84, 96.)

 All further undesignated section references are to title 18 United States Code unless specified otherwise.

 Penal Code former section 12021.